166 So. 8

**AMERICAN NAT. BANK & TRUST CO. v. BANCO NACIONAL DE NICARAGUA, Inc.**

I Div. 882.

Supreme Court of Alabama.

Jan. 23, 1936.

Rehearing Denied March 5, 1936.

616

Thomas A. Hamilton and J. Gaillard Hamilton, both of Mobile, for appellant.

Smith & Johnston, of Mobile, for appellee.

KNIGHT, Justice.

Suit by the Banco Nacional de Nicaragua, Inc., a corporation organized, and doing business under the laws of Nicaragua and having its place of business at Bluefields, Nicaragua, against the American National Bank & Trust Company, a banking institution doing business at Mobile, Ala.

The suit was brought to recover certain sums of money paid by plaintiff for certain drafts drawn on the American National Bank & Trust Company of Mobile, Ala., by J. B. Ardoyno, to the order of Banco Nacional de Nicaragua, Inc., under and in compliance with the terms of a letter of credit given by defendant to the said Ardoyno. The drafts were drawn, respectively, on the following dates: January 26, January 27, February 1, and February 2, 1934.

A separate count was incorporated in the complaint to recover for the amount paid for each draft, and each count opened with the following averment: "That on, to-wit, December 28th, 1933, the defendant issued to one J. B. Ardoyno an instrument in writing, commonly known as a letter of credit, a copy of which is hereto attached, marked 'Exhibit A,' and made part of this count, and mailed a copy of said instrument to the plaintiff, together with a letter from the defendant to the plaintiff dated December 28, 1933, a copy of which is hereto attached, marked 'Exhibit B' and made a part of this count."

Exhibit A, referred to in the several counts, is as follows:

"No. 128.
"American National Bank & Trust Co.
"Mobile, Alabama,
"December 28th, 1933.
"Mr. J. B. Ardoyno, Bluefields, Nicaragua.

"Dear Sir: We hereby authorize you to value on us through Banco Nacional de Nicaragua for account of Gulf Fruit & Steamship Corporation up to aggregate amount of Ten Thousand Dollars ($10,000.-00) available by your drafts at sight on us.

"This credit is to be reinstated for the full amount of ten thousand dollars upon advice from us to the Banco Nacional de Nicaragua, Bluefields, by cable or letter.

"Mr. Ardoyno's signature is as follows:
"[Signed] J. B. Ardoyno.

"Bills of exchange must be negotiated not later than April 1st, 1934. This credit may be cancelled by our giving ten days' notice, after which no drafts may be nogotiated hereunder.

"We hereby agree with the drawers, endorsers and bona fide holders of drafts

drawn under and in compliance with the terms of this credit that the same shall be duly honored on presentation at the office of the drawee, upon presentation.

"Each draft must state on its face that it is drawn under American National Bank & Trust Company letter of credit No. 128. This cancels our letter of credit No. 127 in favor of Cia Exportadora Nacional.

"We are, dear sirs, yours faithfully,

"American National Bank & Trust Co.,
"H. S. Denniston, President.
"H. K. Baker, Cashier."

Exhibit B, referred to in the several counts, is as follows:

"American National Bank & Trust Company,

"Mobile, Ala. December 28th, 1933.

"Banco Nacional deNicaragua, Bluefields, Nicaragua.

"Gentlemen: We have today issued to Mr. J. B. Ardoyno our letter of credit No. 128 in the amount of $10,000, a copy of which is enclosed herewith. This is to replace our letter of credit No. 127 in favor of Compania, Exportadora Nacional. You will note that under this new letter of credit no shipping documents will be required.

"As the shipments of bananas reach Mobile, however, the Gulf Fruit & Steamship Corporation will ask us to instruct you by cablegram to reinstate the letter of credit again for the full amount of $10,000. When doing this, we shall use the special test words which we sent in our letter of December 16th, which we trust have by now reached you in the mail. We would appreciate it if you would take note of the following word which will mean 'please reinstate our letter of credit No. 128 in the full amount of $10,000.' —ZUSIC.

"We would appreciate it if you would be so kind as to get our previous letter of credit from the Compania Exportadora Nacional and return same to us at the earliest possible moment.

"We are informed that you had not received our test words when we cabled you on the 26th that we would honor drafts to the extent of $3500, so that we again asked the Whitney Bank to cable you that the message we sent you was authentic.

"Very truly yours,
"HSD–R    H. S. Denniston, President.
"Enc."

The defendant demurred to each count of the complaint, assigning numerous grounds. These demurrers were overruled by the court. However, the plaintiff thereafter amended the complaint by adding to the common averments of each count the following averment:

"Plaintiff avers that on, to-wit, January 23, 1934, the defendant cabled to the plaintiff 'Zusic,' and that thereafter the drafts alleged in counts 1, 2, 3 and 4 of this complaint were presented to the plaintiff by the said J. B. Ardoyno, and paid by the plaintiff as alleged in each of said counts, and said drafts constituted all the drafts drawn by the said J. B. Ardoyno on the defendant, through the plaintiff, after the receipt of said cablegram of January 23, 1934."

To the complaint and to each count separately the defendant filed eight pleas; the first three being intended as the general issue, while pleas 4, 5, 6, 7, and 8 were special pleas. Pleas 4 and 5 averred that the defendant had paid the draft or demand, for the recovery of which the suit was brought before the commencement of the action, "except the sum of two-wit, Twenty-three hundred Seventy-four and 31/100 dollars ($2,374.31)," and that it tendered to said plaintiff said sum, the amount due it, before the action was commenced, and brought the tender money into court.

The sixth plea was a plea of tender in code form.

Pleas 7 and 8, as amended, set up all the facts relied upon by the defendant to defeat plaintiff's action. Plea 8 appears in the report of the case.

The court sustained plaintiff's demurrers to pleas 4, 5, 6, and to 7 and 8, as amended; so the case went to the jury only upon the plea of the general issue.

On the trial of the cause, the plaintiff introduced in evidence the letter of credit given by defendant to J. B. Ardoyno on December 28, 1933, and also the letter written by the defendant to the plaintiff under same date, copies of which letters being made a part of plaintiff's complaint, marked "exhibits A and B."

The plaintiff read in evidence answers of defendant, showing, among other things, that on January 15, 1934, the defendant sent cablegram to plaintiff, which translated, omitting signature, read: "Banco Nacional de Nicaragua, Bluefields, Nicaragua. January 15. Please reinstate our letter of credit 128 in the full amount of $10,000.00. Draft for $5,000.00 has been

paid"—and showing that another cablegram was sent by defendant to plaintiff on January 23, 1934, which translated into English, omitting signature, reads: "Banco Nacional de Nicaragua, Bluefields, Nicaragua. January 23. Please reinstate our letter of credit 128 in the full amount of $10,000. Draft for $2,274 has been paid."

The evidence shows that the following drafts drawn by Ardoyno on the defendant, each to the order of the plaintiff, under the letter of credit, were paid by defendant at Mobile, Ala.:

| No. | Date. | Amount. | Dated Presented. | Date filed. |
| --- | --- | --- | --- | --- |
| 1. | January 4, 1934 | $5,000.00 | January 15, 1934 | January 15, 1934. |
| 2. | January 8, 1934 | 2,274.31 | January 22, 1934 | January 22, 1934. |
| 3. | January 12, 1934 | 2,725.69 | February 1, 1934 | February 1, 1934. |
| 4. | January 15, 1934 | 1,500.00 | February 1, 1934 | February 1, 1934. |
| 5. | January 17, 1934 | 1,500.00 | February 1, 1934 | February 1, 1934. |
| 6. | January 20, 1934 | 1,100.00 | February 9, 1934 | February 9, 1934. |
| 7. | January 22, 1934 | 800.00 | February 9, 1934 | February 9, 1934. |

On the margin of each of said drafts is the following notation:

"Drawn under American National Bank and Trust Company letter of credit No. 128, 1933, in favor of Mr. J. B. Ardoyno for account of Gulf Fruit and Steamship Corporation."

Plaintiff also read in evidence each of the drafts sued on in this case, with proof that they were drawn by the said Ardoyno, on their respective dates, and that they were each duly presented to defendant for payment, and that payment had been refused, but it was agreed that respondent "offered to pay $2,374.31 against draft 8, the first of the four drafts, the same being for $4,500.00, the said $2,374.31 being the amount that defendant contended was due." Each of said drafts purported to be drawn under said letter of credit.

The plaintiff read in evidence the following agreement between counsel:

"It is agreed that the signature of J. B. Ardoyno appearing on the copy of the letter of credit forwarded to plaintiff by defendant with the letter of December 28, 1933 (both heretofore quoted) is the true and correct signature of said Ardoyno.

"That draft No. 4, dated January 15, 1934, for $1,500.00 was drawn after the cablegram from defendant to plaintiff, dated January 15, 1934 (heretofore quoted), and that said draft No. 4, was paid by plaintiff after it received said cablegram.

"That draft No. 8, dated January 26, 1934, for $4,500.00 was drawn after the cablegram from defendant to plaintiff, dated January 23, 1934 (heretofore quoted), and that said draft 8 was paid by plaintiff after it received said cablegram.

"That each of the drafts sued on in the complaint, as well as the drafts which were paid by the defendant, were purchased by plaintiff upon the dates shown on the face of the respective drafts; and that the signatures of said J. B. Ardoyno upon the drafts sued on are the genuine signatures of J. B. Ardoyno."

It appears from the evidence in the case that defendant's only relationship and connection with the Gulf Fruit & Steamship Corporation was that of banker and customer, and that the letter of credit was issued at the request of the Gulf Fruit & Steamship Corporation.

The defendant read in evidence an agreement between counsel, in which it was agreed, among other things:

"That it is a fact that plaintiff knew, from defendant's cable of January 15, 1934, that defendant had received draft No. 1 drawn under said letter of credit, and that plaintiff also understood at that time that drafts No. 2 and No. 3 drawn under said letter of credit were outstanding and somewhere in transit, though plaintiff did not know exactly where they were.

"That it is a fact that plaintiff knew from defendant's cable of January 23, 1934 that defendant had received draft No. 2 drawn under said letter of credit, and that plaintiff also understood at that time that drafts No. 3, No. 4, No. 5, No. 6 and No. 7 were all outstanding and somewhere in transit, though plaintiff did not know exactly where they were."

H. S. Denniston, the president of the American National Bank & Trust Company, testified in the cause on behalf of the defendant, and we quote as follows from his testimony:

"Yes, this draft No. 1, for $5,000.00, which has been introduced in evidence, was paid by the bank as and when presented.

Yes, this cablegram, dated the 15th, was sent by us to Nicaragua on the date it purports to be dated. It said, 'Please reinstate our letter of credit No. 128 in the full amount of $10,000.00. Draft for $5,000.00 has been paid.' We had no means whatsoever of knowing, and did not know, at the time we paid that first draft and sent that cable, what, if any, drafts were outstanding and in transit. Yes, sir, we received and paid the second draft, dated the 22nd. On the following day we sent a cable to the plaintiff, and it said: 'Please reinstate our letter of credit No. 128 in the full amount of '$10,000.00. Draft for $2,-274 has been paid.' At the time we sent that second cable we had no means of knowing what drafts were outstanding and in transit. Of course, the bank down in Nicaragua knew it, but we did not know it."

The evidence shows that the defendant, when the first draft sued on was presented for payment, denied liability in the amount represented by that draft, but admitted that it was liable to plaintiff in the sum of $2,-374.31, claiming that that sum was the only amount for which it was liable to plaintiff under the letter of credit, and offered to pay that amount on the draft, but the collecting bank declined to accept the tender. It also appears that defendant paid the tender money into court, and it is now in court.

While there was other evidence in the case, the foregoing statement of facts is sufficient for the purposes of a proper decision of this case.

"Letters of credit are instruments long and well known to commercial law and mercantile usage. Such a letter fills a well-known office in effecting exchange, and while no set form of words may be necessary, yet a letter of credit as known to the law must contain a request (general or special) to pay the bearer or person named money, or sell him some commodity on credit, and give him something of value and look to the drawer of the letter for recompense, and it partakes of the nature of a negotiable instrument. The rules governing bills of exchange and negotiable promissory notes are always the same, fixed and determinate; *while letters of credit are to be construed with reference to the particular and often varying terms in which they may be expressed, the circumstances and intention of the parties to them, and the usages of the particular trade or business*

*contemplated."* (Italics supplied.) 3 R.C. L. 848.

A letter of credit is regarded as a written proposal to stand as surety or guarantor for the person named in the letter, either in a definite or indefinite amount, as the letter may indicate, which may be accepted in case of a special letter of credit, by the particular person addressed, or, if it be a general letter of credit, by some one of the general public. 28 Corpus Juris, § 17, p. 897.

Letters of credit, when accepted and acted upon by the offeree, becomes a binding contract, making it obligatory upon the writer of the letter to stand to and abide by the terms of his offer. Banco Nacional Ultramarino v. First National Bank of Boston (D.C.) 289 F. 169; Kennedy v. Geddes, 8 Port. 263, 33 Am.Dec. 289.

Letters of credit are sometimes spoken of as clean or documentary. *"A clean letter of credit* provides for an acceptance or negotiation of a draft unaccompanied by shipping documents. *A documentary letter of credit* provides for an acceptance or negotiation of a draft accompanied by shipping documents."

In the case before us, the issuing bank, appellant here, expressly provided that no shipping documents would be required.

It seems to be well settled that a party, who is entitled to draw against a letter of credit, must strictly observe the terms and conditions under which the credit is to become available, and, if he does not, and the bank refuses to honor his draft, he has no cause of action against the bank. Lamborn et al. v. Lake Shore Banking & Trust Co., 196 App.Div. 504, 188 N.Y.S. 162.

In the case at bar, the appellant had issued its clean letter of credit to Ardoyno at Bluefields, Nicaragua, authorizing the latter to *value* on it through Banco Nacional de Nicaragua, for account of Gulf Fruit & Steamship Corporation, up to the aggregate amount of $10,000, available by his (Ardoyno's) drafts at sight.

This letter of credit contained, among other provisions, not necessary to be stated, the further provision: "This credit is to be reinstated for full amount of ten thousand dollars upon advice from us *to the Banco Nacional de Nicaragua,* Bluefields, *by cable or letter."* (Italics supplied.)

On the day of the issuance of the letter of credit to Ardoyno, it appears the ap-

pellant wrote the plaintiff that it had issued its letter of credit No. 128 in the amount of $10,000 and inclosed a copy of the same. We have heretofore set out the letter of defendant, and it is unnecessary to repeat its terms here.

As we read and construe the correspondence, which constituted the letter of credit to Ardoyno, it was the purpose of the issuing bank to inform Ardoyno and the plaintiff that Ardoyno had a line of credit with the defendant to the amount of $10,000 and that he could *value* on it through plaintiff up to that amount, and up to that amount only.

The place of payment of the drafts was definitely fixed by the contract at Mobile, Ala. It was at Mobile that defendant obligated itself to pay drafts drawn by Ardoyno. The credit established was with the defendant at Mobile, Ala. The letter of credit given Ardoyno so advised the latter; for we find in the letter the following which justifies this conclusion: "We hereby authorize you to *value* on us." That means, of course, that Ardoyno had the stated amount of credit with defendant, and was authorized to draw on defendant for that amount. · The plaintiff, of course, must be held to have so understood this letter.

When the draft for $5,000 was drawn by Ardoyno, and paid by the defendant at Mobile, this served, of itself, to reduce or diminish Ardoyno's previous credit allowance by the $5,000 so paid, thus leaving his then credit limit less than $10,000.

The cablegram sent by defendant to plaintiff on the 15th of January, just after the payment of the $5,000 draft, and which translated reads: "January 15. Please reinstate our letter of credit 128 in full amount of $10,000.00. Draft for $5,000.00 has been paid"—must be read in the light of the Mobile background, in connection with the evident purpose and real meaning of the letter of credit as originally issued, not in the light of the Nicaragua background. In Bluefields, Nicaragua, the plaintiff well knew that other checks had been drawn; not so by the defendant at Mobile. And plaintiff should have taken cognizance of the fact.

The evident purpose of the defendant was, with the $5,000 subtracted from the original credit amount, to again reinstate Ardoyno's aggregate credit limit by the addition of a sufficient sum to the amount then remaining to his credit in the Mobile bank (not at Bluefields, Nicaragua) to bring that credit up to $10,000.

Drafts drawn by the said Ardoyno after the first draft of $5,000 should have been taken into account by plaintiff in purchasing other drafts on the strength of defendant's letter of credit.

When Ardoyno's second draft for $2,274 reached Mobile and was paid, the defendant again cabled the plaintiff, on January 23, 1934, as follows, omitting signature: "January 23. Please reinstate our letter of credit 128 in the full amount of $10,000.00. Draft for $2,274 has been paid."

The payment of this last-mentioned draft served to reduce Ardoyno's line of credit as established and fixed by the cablegram of January 15, 1934, by the amount of that draft, so that the cablegram of January 23d served to re-establish Ardoyno's aggregate credit at $10,000, out of which drafts subsequently reaching Mobile could be paid.

It appears that defendant knew of no other drafts having been drawn by Ardoyno at the time it sent the plaintiff the cable of January 23, 1934.

With the letter of credit reinstated on January 23, 1934, the defendant's maximum liability under the reinstatement was $10,000. Thereafter drafts drawn by Ardoyno, in the aggregate sum of $7,625.69 to the order of plaintiff, were presented to and paid by the defendant. The drafts were drawn on the following dates: January 12, January 15, January 17, January 20, and January 22, 1934—and they were paid, respectively, three on February 1, and two on February 9, 1934.

The payment of these drafts reduced Ardoyno's last-reinstated credit to the sum of $2,374.31, and for which only the defendant was liable to the plaintiff.

Notwithstanding this fact, the defendant was thereafter presented with drafts drawn by Ardoyno through the plaintiff in the aggregate sum of $9,000. These drafts defendant declined to pay, but on which he admitted liability to the amount of $2,374.31, and which he offered to pay, but which plaintiff declined to accept in full of defendant's liability. This $2,374.31 defendant paid into court along with its pleas. It was all that was due plaintiff.

622

It appears that both the plaintiff and Ardoyno attempted to allocate, by indorsement on the letter of credit, the drafts drawn on defendant, allocating the first three aggregating $10,000 to the original letter of credit, the next four contracted as reinstated January 15, 1934, aggregating $4,900, and the remaining four, aggregating $9,000, under the cablegram of January 23, 1934. This fact, however, can exert no influence upon the proper decision of this cause. At most such attempted allocation but reflects the plaintiff's interpretation of the contract.

■ We may here say that it is not necessary to indorse on a letter of credit the amounts advanced on it, except in case of a general letter of credit, with definite or fixed limitation as to the amount of credit. In such case, it is not only proper but necessary that the letter should show the advances made on it in order that others to whom it may be presented may know to what extent the credit has been used, or exhausted.

The defendant's plea 8, as amended, presented a defense to the action, and the court committed error in sustaining demurrer thereto. Lamborn v. Lake Shore Banking & Trust Co., supra.

We have discussed this case without regard to any technical error of the court in sustaining plaintiff's demurrer to plea 6.

It follows that the judgment of the circuit court must be reversed, and the cause remanded for another trial in conformity to this opinion.

Reversed and remanded.

THOMAS, BOULDIN, and BROWN, JJ., concur.

On Rehearing.

KNIGHT, Justice.

In passing upon the contract as disclosed by the letter of credit, and accompanying letters to plaintiff and Ardoyno, presented by the pleading, we were addressing ourselves to the case made by the record, and did not intend to foreclose further inquiry of fact, or matters by way of estoppel, which might have occurred subsequent to the issuance of the letter of credit.

Application for rehearing overruled.

THOMAS, BOULDIN, and BROWN, JJ., concur.