189 So. 191

**AMERICAN NAT. BANK & TRUST CO. v. BANCO NACIONAL DE NICARAGUA, Inc.**

*1 Div. 17.*

Supreme Court of Alabama.

May 11, 1939.

Rehearing Denied June 8, 1939.

Thos. A. Hamilton and J. Gaillard Hamilton, both of Mobile, for appellant.

Smith & Johnston and Chas. B. Arendall, Jr., all of Mobile, for appellee.

KNIGHT, Justice.

This is the second appeal in this case. American National Bank & Trust Co. v.

Banco Nacional De Nicaragua, 231 Ala. 614, 166 So. 8. However, the case presented by the record on this appeal is quite different from the case made by the record on the former appeal, both as to pleadings and evidence.

Each of the trials in the circuit court resulted in a verdict for the plaintiff, appellee here. In the discussion of this case, on this appeal, we shall for convenience refer to the appellant as defendant, and the appellee as plaintiff.

After the reversal and remandment of the case on the former appeal, the plaintiff amended its complaint by adding two additional counts—counts 5 and 6—and plaintiff also filed, in addition to a general replication to plea 8, as amended, and as pleaded separately to counts 1, 2, 3 and 4, two special replications, numbered 2 and 3. Plea 8 as amended is set out at length in the report of this case on former appeal.

The court sustained a demurrer to replication No. 3, and this replication, therefore, went out of the case.

The defendant, by written motions, moved to strike, separately and severally, counts 5 and 6, and also to strike certain parts of these added counts, but each of said motions was overruled by the court, and in each instance the defendant duly reserved an exception.

After the court had refused to strike counts 5 and 6, or any of the parts of said counts, the defendant demurred to each of said counts, and these demurrers were overruled by the court.

To counts 5 and 6, separately and severally, in addition to the general issue, the defendant filed a number of special pleas, including plea 8, as amended, theretofore filed to counts 1, 2, 3 and 4.

The court sustained plaintiff's demurrer to pleas E and F, but overruled the same as to pleas C and D. Plea E was addressed to added count 5, while F was addressed to count 6. Pleas C and D were addressed to both counts 5 and 6, separately and severally.

Added counts 5 and 6 are predicated upon the identical letter of credit of December 28, 1933, issued to J. B. Ardoyno, and the reinstatement thereof on January 23, 1934, set forth in original counts 1, 2, 3 and 4, and seek to recover of the defendant the amount of $9000, alleged to be due on

four drafts drawn upon defendant by one J. B. Ardoyno under said letter of credit and the reinstatements thereof under date of January 23, 1934, and which it is alleged the plaintiff cashed or purchased pursuant to the January 23, 1934, reinstatement of said letter of credit, and the letter written to plaintiff at the time of the issuance of said letter of credit of December 28, 1933. A copy of the letter of credit issued to said J. B. Ardoyno under date of December 28, 1933, and a copy of the letter written by defendant to plaintiff under same date, advising plaintiff of the issuance of said letter of credit to said Ardoyno, and making certain suggestions and directions, are also attached to, and made a part of, said counts 5 and 6. These documents are also set out in full in the report of the case on former appeal, and we will not, therefore, again set them out on this appeal.

In added count 5 plaintiff, by way of inducement, and to show the former course of dealings between plaintiff and defendant, in the matter of supplying credit to the Gulf Fruit and Steamship Corporation in Nicaragua, in order that it might purchase and export to Mobile, Alabama, bananas, pleaded two certain other letters of credit issued by the defendant to its former correspondent, Compania Exportadora Nacional, one under date of November 14, 1933, and the other under date of December 13, 1933. Each was issued, as above stated, to enable the Gulf Fruit and Steamship Corporation to purchase bananas in Nicaragua, and export same to Mobile, Alabama, for sale at the latter place, or elsewhere. The plaintiff also brought forward, as a part of said count, the two letters written by the defendant to plaintiff at the time of the issuance of these letters of credit. While these letters of credit were issued to the Compania Exportadora Nacional, they were issued by the defendant at the instance of the said Gulf Fruit & Steamship Corporation, and each of said letters authorized the Compania Exportadora Nacional to value on the defendant on account of the said Gulf Fruit & Steamship Corporation. These former letters of credit were numbered 126 and 127 respectively.

We deem it proper to here set out the said letters of credit 126 and 127, and the two letters written by defendant to plaintiff with reference thereto.

Letter of credit 126 reads:

"No. 126    Cable Address:
"'Amtrust' .

"American National Bank & Trust
Company
"Mobile, Alabama,
"November 24th, 1933.

"Compania Exportadora Nacional,
"Bluefields, Nicaragua.

"Irrevocable Revolving Letter of Credit

"Dear Sirs:

"We hereby authorize you to value on us for account of Gulf Fruit & S. S. Corporation up to aggregate amount of Ten Thousand and 00/100 ($10,000.00) available by your drafts at sight for 50/ per count bunch of bananas invoice cost of as per contract between you and Gulf Fruit & S. S. Corporation

"Except as noted above, drafts drawn hereunder are to be accompanied by a complete set of negotiable bills of lading drawn to the order of shipper and endorsed in blank (notify Gulf Fruit & Steamship Corporation) as well as consular and commercial invoices evidencing shipment of Al Prime Export Bananas. When the draft has been paid under this Letter of Credit the credit shall again become effective and no two drafts shall be outstanding at one time against it.

"A copy of the consular invoice, commercial invoice and one of the original bills of lading must be forwarded by first mail direct to us attaching to the draft a statement to the effect that this has been done.

"The bills of lading must be dated not later than December 31st, 1933.

"Bills of exchange must be negotiated not later than December 31st, 1933.

"Insurance to be covered by Gulf Fruit & S. S. Corporation.

"We hereby agree with the drawers, endorsers and bona fide holders of drafts drawn under and in compliance with the terms of this credit that the same shall be duly honored on presentation at the office of the drawee, payable at maturity at American National Bank & Trust Company.
"Exhibit 'A–1' (page 1)

"Each draft must state on its face that it is drawn under American National Bank & Trust Company letter of credit No. 126.

"We are, dear sirs, yours faithfully
"American National Bank & Trust
Company
"(sgd.) H. S. Denniston,
"Pres."
"(sgd.) H. K. Baker
Cashier."

The letter written by defendant to plaintiff at the time of the issuance of letter of credit 126, copied above, is as follows:

"American National Bank & Trust
Company
"Mobile, Ala.
Nov. 24th, 1933.

"Banco Nacional de Nicaragua,
"Managua, Nicaragua.

"Gentlemen:

"At the request of the Gulf Fruit & Steamship Corporation we enclose herewith our irrevocable revolving letter of credit No. 126 in favor of the Compania Exportadora Nacional, at Bluefields, Nicaragua, covering shipments of bananas not to exceed $10,000 each, good until December 31st, 1933.

"We understand that after the first two shipments are made there will be a slight change in the prices and therefore, upon receipt of further information we shall make such modification as may be necessary. As soon as Mr. English returns we are informed that a new letter of credit will be requested.

"Very truly yours,
"(sgd.) H. S. Denniston
"President."

"HSD-R

"Enc. Original letter of Credit No. 126."

The defendant's letter of credit No. 127, under date of December 13, 1933, is as follows:

"No. 127    Cable Address:
"'Amtrust'

"American National Bank & Trust
Company
"Mobile, Alabama.
"December 13th, 1933.

"Compania Exportadora Nacional,
"Bluefields, Nicaragua.

"Irrevocable Revolving Letter of Credit

"Dear Sirs:

"We hereby authorize you to value on us for account of Gulf Fruit & Steamship Corporation up to aggregate amount of Fifteen Thousand & No/100 Dollars ($15,-

000) available by your drafts at sight for the invoice cost of bananas.

"Except as noted below, drafts drawn hereunder are to be accompanied by a complete set of negotiable bills of lading drawn to the order of shipper and endorsed in blank as well as consular and commercial invoices evidencing shipment of A1 prime export bananas. Draft must be accompanied by invoice, tally sheet and bill of lading must be signed by captain of ship. Draft must be OK'D by W. R. Daves. Cargo No. 2 must be figured at sixty cents per payable bunch, cargoes Nos. 3 & 4 must be figured at fifty cents per payable bunch and subsequent cargoes not to exceed thirty five cents per payable bunch. When a draft has been paid under this letter of credit the credit shall again become effective and no more than two drafts shall be outstanding at one time against it. This letter of credit is subject to cancellation after which one cargo may be shipped within fifteen days from date of cancellation.

"A copy of the consular invoice, commercial invoice and one of the original bills of lading must be forwarded by first mail direct to us attaching to the draft a statement to the effect that this has been done.

"The bills of lading must be dated not later than

"Bills of exchange must be negotiated not later than

"Insurance to be covered by Gulf Fruit & Steamship Corporation

"Exhibit 'C' (page 1)

"We hereby agree with the drawers, endorsers and bona fide holders of drafts drawn under and in compliance with the terms of this credit that the same shall be duly honored on presentation at the office of the drawee, payable at maturity at American National Bank & Trust Company

"Each draft must state on its face that it is drawn under American National Bank & Trust Company letter of credit No. 127. This letter of credit cancels our letter of credit No. 126.

"We are, dear sirs, yours faithfully,
          "American National Bank & Trust
               Company
     "(sgd.)  H. S. Denniston,
                    "Pres."
"(sgd.)  H. K. Baker
              "Cashier."

In issuing this letter the defendant wrote plaintiff as follows:

"American National Bank & Trust
          Company
     "Mobile, Ala.
               "December 13th, 1933.
"Banco Nacional de Nicaragua,
     "Managua, Nicaragua.
"Gentlemen:

"At the request of the Gulf Fruit & Steamship Corporation, under date of November 24th, we mailed to you our irrevocable revolving letter of credit No. 126 in favor of Compania Exportadora Nacional, at Bluefields, covering shipments of bananas not to exceed $10,000 each and good until December 31st, 1933. We have cancelled this letter of credit and have today issued our irrevocable revolving letter of credit No. 127 covering shipments of bananas not to exceed $15,000 each. Kindly return to us our letter of credit No. 126 by first mail.

"Thanking you in advance, we are
     "Very truly yours,
"HSD-R.          (sgd.)  H. S. Denniston
                    "President."

The evident purpose of the plaintiff, in pleading these two letters of credit (126 and 127) in count 5, together with the facts showing the purposes for which they were issued, the circumstances and intention of the parties, and how the credits were used and intended to be used, was to shed light upon the situation existing and surrounding the parties at the time of the issuance of the letter of credit of December 28, 1933, and at the time of the sending of the two cablegrams reinstating said letter of credit of December 28, 1933, in order to enable the court to properly interpret said last numbered letter of credit and the two reinstatements thereof.

As pointed out in our former opinion in this case, "Letters of credit are to be construed with reference to the particular and often varying terms in which they are expressed, the circumstances and the intention of the parties to them, and the usages of the particular trade. 3 R.C.L. 848." In short, that in interpreting and construing such contracts, we may say, the court should place itself as nearly as possible in the situation of the parties, in order to better understand just what was in their mind, and the purposes they intended to accomplish, when the instrument was executed. Tennessee & Coosa R. Co. v. East Alabama Ry. Co., 73 Ala. 426.

In view of the well understood rules of interpretation and construction of contracts, we are of the opinion, and so hold, that counts 5 and 6, added after the remandment of the cause, were not subject to any of the grounds of demurrer interposed thereto. Likewise, we think the court committed no error in overruling the motions of the defendant to strike said counts, and the several parts of the same.

We are also of the opinion, and so hold, that plaintiff's special replication number 2 to plea 8 as amended, as filed to counts 1, 2, 3 and 4 was not subject to any ground of defendant's demurrer thereto. Nor did the court commit error in overruling defendant's motion to strike certain designated parts of said replication. If the evidence sustained this replication, it constituted a complete answer to said amended plea 8 as filed to said counts 1, 2, 3 and 4.

The court sustained the plaintiff's demurrers to defendant's special pleas E and F. In these rulings there was no error. These pleas were but mere arguments, and a rehearsal of defendant's contention. Every fact averred in them was provable under other pleas in the case, and the record shows that the defendant was permitted by the court to offer evidence touching all matters attempted to be set up in said pleas. The sustaining of the demurrers to these pleas, even if erroneous, could not, therefore, have been prejudicial to the defendant. The defendant can take nothing by these assignments of error.

There was such conflict in the evidence as required its submission to the jury on the issues presented by the pleadings. The defendant was not, therefore, entitled to the general charge as to any of the counts of the complaint.

A detailed discussion of the evidence would serve no useful purpose. Suffice it to say that it was open to the jury to find from the evidence, among other things: That Denniston was the alter ego of the defendant in all the transaction it had with the Gulf Fruit & Steamship Corporation, in connection with the latter's purchases of bananas in Nicaragua, and in the issuance of the several letters of credit mentioned in the pleading and evidence in this cause; that this alter ego issued the documentary letters of credit numbered 126 and 127, under and by the terms of which drafts could only be drawn with bills of lading and certain other documents attached; that it became impossible to successfully conduct the Gulf Fruit & Steamship Corporation's business in Nicaragua under the said documentary letters of credit; that the bananas had to be bought from the natives in the interior, and assembled at the port of shipment, and to do so the necessary money with which to make the purchases in the interior had to be available before the ship could be loaded, and shipping documents obtained; that in view of these facts documentary letters of credit had to be discarded, and a clean letter of credit, which required no bills of lading to be attached to drafts issued; that the details of the business was explained to defendant's said alter ego at the time he issued to Ardoyno the clean letter of credit under date of December 28, 1933; that Denniston fully understood the purposes of the letters of credit, and that he could not have been ignorant of the reasons for making the change from documentary letters of credit to a clean letter of credit; that in recognition of this fact, and the knowledge of the differences in liability of the issuing bank under the two classes of letters of credit, Denniston, to protect the defendant from liability, and its stockholders from possible loss, required the Gulf Fruit & Steamship Corporation to execute to the defendant a bond of indemnity, with sufficient surety. That Denniston knew the approximate cost in Nicaragua of a cargo of bananas; that he knew, at the time he reinstated the letter of credit for the aggregate amount of $10,000 on January 15, 1934, that Ardoyno had purchased and shipped cargo number three of bananas, and that the same had arrived at Mobile, Alabama; that he, Denniston, knew at the time he reinstated the letter of credit on January 23, 1934, that Ardoyno had bought his second cargo of bananas, and that this second cargo (No. 4) had arrived at Mobile, and he, Denniston, knew the approximate costs of both of said cargoes, Nos. 3 and 4; and that the last reinstatement of the letter of credit on January 23, 1934, was made to provide means for Ardoyno to purchase his third cargo of bananas (cargo No. 5). That this Cargo No. 5 could only have been bought with means provided by the last reinstatement of the letter of credit; that it was contemplated by all of said parties, the said Denniston, the defendant, Ardoyno, and

the plaintiff, and fully understood by them, that as the shipments of bananas reached Mobile the letter of credit of December 28, 1933, would be reinstated for the aggregate amount of $10,000, not that the reinstatement should be made on the presentation and payment of any particular draft or drafts. It was also open to the jury to find that the drafts sued on, each of which was drawn subsequent to the last reinstatement of the letter of credit, were drawn by Ardoyno, and purchased by the plaintiff under the reinstatement of the letter of credit of January 23, 1934; and it also appears, without conflict, that said cargo No. 5 duly arrived in Mobile and was received by the said Gulf Fruit & Steamship Corporation.

The above-stated evidential facts, which did not appear on the former appeal, show a different background for the open letter of credit of December 28, 1934, its scope and purpose, and differentiate the case as now presented from that presented on former appeal. In saying on former appeal that the cablegram of Jan. 15, 1934, reinstating the letter of credit of Dec. 28, 1933, must be read "in the light of the Mobile background," it was not our intention to establish a rule of law, but simply to hold that under the pleading as then cast, and the evidence then before the court, the said cablegram should be so read.

■ The defendant here argues that it was entitled to the general charge as to counts 5 and 6 because of a variance between the averments of said counts and the proof. Suffice it to say, even if there was otherwise merit in the contention, the record fails to disclose that the court's attention was called to the question of variance in the request for the charges, as required by the rule of practice. Code 1923, Vol. 4, p. 906, Rule 34; Bickley, McClure & Co. v. Porter et al., 193 Ala. 607, 69 So. 565; Futvoye v. Chuites, 224 Ala. 458, 140 So. 432.

■ The letter of credit issued to Ardoyno by defendant was what is termed in the law a clean letter of credit, authorizing Ardoyno to draw on defendant to the full extent of $10,000, and plaintiff was authorized to cash said drafts, observing the one condition, viz., that each draft must "state on its face that it is drawn under American National Bank & Trust Company 'Letter of Credit No. 128." Ardoyno, in drawing each of said drafts, faithfully observed this limitation or condition. So, then, in cashing such drafts, the plaintiff was under *no duty* to notify the defendant "of the drawing of such drafts or the purchase thereof prior to presentment." This suffices to demonstrate that the court committed no error in giving at the request of the plaintiff charge numbered 16. If, however, the defendant conceived that the charge had a tendency to mislead the jury, he should have requested an explanatory charge.

■ The only criticism that can be made against plaintiff's given charge 28 is that it may possibly have had a misleading tendency. If so, the defendant should have asked an explanatory charge. In substance this charge asserts a sound proposition of law. Brooks v. Bank of Wetumpka, 210 Ala. 689, 98 So. 907; Penn Mut. Life Ins. Co. v. Fiquett, 229 Ala. 203, 155 So. 702; Ashley v. Cathcart, 159 Ala. 474, 49 So. 75; Denson v. Caddell, 201 Ala. 194, 77 So. 720; Minge v. Green, 176 Ala. 343, 58 So. 381; Hamilton v. Stone, 202 Ala. 468, 80 So. 852.

■ The court committed no error in declining to charge the jury in the terms of defendant's refused charge nine. This charge would have instructed the jury to find for the defendant upon the hypothesized facts, notwithstanding the defendant admitted that it owed the plaintiff under said letter of credit, and the January 23, 1934, renewal thereof, $2,374.31, had tendered that amount to plaintiff and had brought said tender money into court. At most, if said charge was otherwise sound, the jury could only have been instructed to find for the defendant on its plea of tender. Such a finding would have fixed title in the plaintiff to the tender money. Otherwise, had the charge as requested been given, and the jury had returned a verdict for defendant, the defendant could have withdrawn the tender money, as the plaintiff would have had no title thereto. The charge was, to say the least, highly misleading and for that reason, the court committed no error in its refusal. Birmingham Paint & Roofing Co. v. Crampton & Tharpe, Ala.Sup., 39 So. 1020.

■ Defendant's refused charge 10 was not only misleading and confusing, but it undertakes to have the jury to determine a question of law. It was therefore properly refused.

Defendant's charges 11, 12, 13, 14 and 17, if not otherwise defective, are subject

to the same vice pointed out in our discussion of Charge 9.

Defendant's refused charge 21 was fully covered by given charge 20.

Defendant's refused charge 35 was fully covered by defendant's given charge 34.

We have examined and considered all other charges requested by defendant and refused by the court, and find that the defendant was not entitled to have the jury instructed in the terms of any of said charges.

It only remains to be said that we have carefully considered each ruling of the court here assigned for error, and which has been argued by appellant's counsel. We find no reversible errors. It follows, therefore, that the judgment of the circuit court is due to be affirmed. So ordered.

Affirmed.

ANDERSON, C. J., and THOMAS and BROWN, JJ., concur.