# Buford *v.* Graden.

## *Assumpsit.*

(Decided May 9, 1912. Rehearing denied June 19, 1912.
59 South. 368.)

1. *Appeal and Error; Record; Review; Objections to Evidence.*—Where objection was taken to rulings on the evidence, and the bill of exceptions was indefinite as to when the objection was made and as to what was intended to be objected to by the general objection, the ruling was not so presented as to be reviewed.

2. *Master and Servant; Contract; Travelling Expenses.*—Where, under the contract, plaintiff was to work for defendant as a salesman, the defendant to pay all expenses of travel and sale except that plaintiff was to pay one half the expenses in going out to Texas to engage in such work, the contract is considered and construed as binding plaintiff to pay half the expenses in going out to Texas, but no more.

3. *Same; Breach; Damage.*—Where plaintiff was employed by defendant as a travelling salesman, he may show as a natural and proximate result of a breach by the defendant of the contract, to pay his expenses, the fact that he was left stranded in another state and the expenses incurred by him in returning home.

4. *Same; Evidence.*—Where it appeared that the defendant instructed another to pay plaintiff for his expenses, plaintiff was entitled to show that it was not the fault of such other person that such expenses were not paid, but that it was the fault of the defendant on account of the failure of defendant to leave with such other person money with which to pay such expenses.

5. *Same; Pleading and Proof.*—The plaintiff cannot recover the value of his services while in the service of the defendant under a complaint alleging no other breach of the contract than the failure to pay plaintiff's expenses.

APPEAL from Marshall Circuit Court.

Heard before Hon. W. W. HARALSON.

Assumpsit by John T. Graden against John W. Buford. Judgment for plaintiff and defendant appeals. Reversed and remanded.

JOHN A. LUSK & SON, for appellant. No brief reached the Reporter.

E. O. McCORD, and THOMAS E. ORR, for appellee. Counsel discuss the errors assigned, but without citation of authority.

DE GRAFFENRIED, J.—On the 18th day of May, 1909, John T. Graden, the appellee, made a contract with John W. Buford, the appellant, whereby the appellee agreed to work for the appellant as a salesman of a patent churn and the patent right to sell the patent churn in certain territories. The appellee was to receive $25 for the first month and $40 per month for the balance of the time. The appellant was to pay all the expenses, as it is expressed in the contract, of travel and sale of said churn, except, says the contract, "Graden is to pay one-half of the expenses in going out." Shortly after making the contract, Graden, with one Downey, went to Texas, where some effort appears to have been made to exploit the churn. We are therefore, from the acts of the parties, justified in concluding that it was contemplated between them, when the contract was made, that Graden was to offer the churn and territory rights for sale in Texas, and that the expression, "Graden is to pay one-half of the expenses in going out," means that Graden was to pay one-half of the traveling expenses in going *to* Texas, but no more. The appellee claims that he went to Texas along with Down-

ey, and undertook to carry out his part of the contract, but that the appellant failed or refused to furnish him with the necessary traveling expenses, and that he thereupon abandoned the contract. This suit was brought by the appellee to recover of the appellant the damages, which, he claims, he sustained by reason of the alleged breach by appellant of the contract.

1. The first and second assignments of error challenge the correctness of the ruling of the trial court in the admission of certain evidence. The manner in which the exceptions were taken, which are made the bases of these assignments of error, is so imperfectly shown by the bill of exceptions that we are not able to say that it is affirmatively shown that the objections to the testimony were seasonably made. The recitals in the bill of exceptions on this subject are as follows: "The plaintiff's counsel then handed to the witness (the appellee) a paper, which the witness said in reply to question by defendant that it was made in 1909. In reply to question by plaintiff's attorney, that he made it in July or August, 1909, and that it is correct, and that he had paid out in all $97.97, calling over the items from the paper. *To all of this the defendant objected.* The court permitted the witness to read these items from the paper, and to this ruling of the court the defendant then and there duly excepted." Whether the appellant objected to the witness being allowed to call the items from the paper *before* or *after* he had called them over, we do not know; and whether the exception to the ruling of the court in permitting the witness to read them from the paper was made before or after the witness had read them from the paper, we do not know. Neither do we know what any of the items were. It may be that many of them were items of admitted expense, about which there was no dispute. The appel-

lant may have intended to object—and it may be that he properly objected—to the court's permitting the witness to use the paper as a memorandum from which to refresh his memory; but, if so, the bill of exceptions fails to show it with that sufficient clearness which the law requires. A bill of exceptions is construed most strongly against the party excepting, and these exceptions to the action of the trial court are stated with too much indefiniteness for us to undertake to say that the action of the court was subject to the general objections interposed by appellant.—*Milliken v. Maund*, 110 Ala. 332, 20 South. 310.

2. It appears that the appellee took two trips to Texas in the matter of the sale of the churn under the contract. He first went with Downey, who had some business arrangement in the nature of a partnership with appellant, and with whom appellee was to co-operate, and who, it appears, had some sort of supervision over appellee, and was to furnish the appellee, for appellant, his expense money. The appellee and Downey seem to have done but little, if anything, of value while the appellee was in Texas on the first trip. On this subject the appellee testified: "That he was at Bonner, Texas, with Downey. That he and Downey had made a deal with a man near there, and were about to close it when a Mr. Mason said he was going to have half of the price the man was to pay. That Downey said, under the circumstances, he was going up in Oklahoma to see his nephew, and that he (appellee) could do as he pleased. That Downey said he was not going to work any more until he got the Moody churn. That he thought the Moody churn would be out soon. That he (appellee) came back home and his expenses (of the return trip) were $17.50. That he had worked at the business in Texas 14 days, which he figured at 95

cents per day. That when he came back he reported to Buford, the appellant. He said that he wanted him (appellee) to go back with him (appellant) to Texas when he got the Moody model. That he and appellant did go back to Texas. That he had a return ticket to Texas, the cost of which was included in the above-stated costs of the return home, $17.50. After they got to Bonner, appellant paid his (appellee's) railroad fare down to Ennis. That he had paid out $27 for 18 days at $1.50 per day. That he was working under the same contract."

In another part of his testimony, the appellee said: "Appellant and appellee stopped at Bonner, Texas, and appellant and Downey arranged for appellee to stop with his brother-in-law and save expenses, and that he did so, and remained until the Moody churn came. That he met appellant at Ennis. That the Moody churn was in the depot; but it was not taken out of the depot. That they worked trying to sell the Bowling churn for about a week. The appellant left (and came on back home). That when appellant left he told Downey he had to go home; for him to pay appellee's expenses until a deal was made out of which some money could be gotten. Finally Downey wanted to go back to Bonner, and said: "I am out of money, and cannot pay your expenses any longer." That he (appellee) then came on back to Alabama."

The trial court, against the objection of appellant, permitted the appellee to testify that it cost him $20 to make his last trip to Alabama; and the court also required the appellant to testify against his objection, that he left no money in Downey's hands, when appellant left Texas, with which to pay appellee's expenses. We are unable to see why this testimony was not relevant. The contract contemplated the payment by appel-

lant of all expenses incurred by the appellee in traveling, "except the expense of traveling going out." If appellant breached his contract and left the appellee stranded in Texas, with no money with which to pay his expenses, then one of the natural proximate results of the breach of the contract flowing in the usual order of things from such breach was the expense to which appellee was put in returning to his home. As the appellant had instructed Downey to pay the expenses of appellee, we think that it was also relevant for the appellee to show that the failure of Downey to pay him the money was due to no fault of Downey, but to the fault of the appellant in failing to leave any money for him with Downey; and that Downey's refusal to pay his expenses therefore justified him in putting an end to the contract and returning home. There was therefore, in our opinion, no error committed by the trial court in its rulings which are made the basis of the second, third, fourth, and fifth assignments of error.

3. The third count of the complaint sets out the contract, which we have already described, and concludes with the following as the only breach of any of its stipulations: "And the plaintiff avers that said contract has been broken in this: The plaintiff entered upon the performance of his duties under said contract, and was performing the same, and the *defendant* did not pay the *expenses,* other than going out." The contract was for no specific time, and was, as we construe it, determinable by either party at will, certainly, at the end of any month. The count does not charge that the appellant had not paid the appellee every dollar of his wages when the appellee refused to go further with his work under the contract, but only that the defendant had not paid his expenses, "other than going out."

"It is not enough to show a right of action against the defendant that the promises or covenants of the respective parties be fully set out, with the averment of performance on the part of the plaintiff. The plaintiff is bound to go further, and in due form to assign such breaches of the defendant's promises or covenants as are relied upon as grounds for a recovery of damages. *And it follows* that there can be *no* recovery upon a breach *not assigned* by the plaintiff."—9 Cyc. 728; *Tallassee Falls Mfg. Co. v. Parks,* 2 Ala. App. 278, 56 South. 588.

Forms 7, 8, and 9 for complaints, page 1194 of the Code, are a legislative recognition of the above requirements of the law.

The above being the situation as to count 3 of the complaint, the trial court, at the written request of the appellee, charged the jury as follows: "The court charges the jury that if the jury reasonably find from the evidence that Downey was to pay the expenses of the plaintiff, and that he failed, refused, or declined to do so, then the plaintiff was authorized to quit the work and come home, and is entitled to recover on count 3 for the amount paid by him for his expenses and the *reasonable value of his services while in the employ of the defendant.*"

As the only matter assigned as a breach of the contract in count 3 was the failure of the appellant to pay the appellee's expenses, and *there was no claim* in said count that he had failed to pay the appellee his wages, the trial court committed reversible error in giving said charge to the jury.

4. We have considered this case at greater length than the amount or questions involved appear to merit. This is, however, the second appeal in this case (*Graden v. Buford,* 1 Ala. App. 668, 56 South. 77) and we

have undertaken, as far as possible, to give expression to our views as to the principles of law which should govern the court upon the next trial, if one is had.

Reversed and remanded.