36 So.2d 583

**LAMBERT v. JEFFERSON.**

5 Div. 239.

Court of Appeals of Alabama.

March 16, 1948.

Rehearing Denied April 6, 1948.

Affirmed After Remandment Aug. 3, 1948.

70

Denson & Denson and L. J. Tyner, all of Opelika, for appellee.

HARWOOD, Judge.

The plaintiff in the court below, appellee here, filed his complaint consisting of one common count for work and labor done for the defendant, and claimed $852 due from the defendant therefor.

The defendant filed 4 pleas thereto. Plea 1 was the general issue; plea 2 set up payment; pleas 3 and 4 were of set-off and recoupment, respectively.

Plaintiff demurred to pleas 3 and 4, but before the demurrers were ruled on he filed additional pleas 5 and 6, again of set-off and recoupment, respectively.

The demurrers as filed and refiled were sustained.

Defendant thereupon filed plea 7, in recoupment. Demurrers to this plea were likewise sustained.

Defendant then filed pleas 8 through 23, said pleas being in set-off and recoupment.

Demurrers filed to these pleas were sustained as to plea 8, and overruled as to pleas 9–23.

Thereupon the case went to trial on the complaint and pleas 1, 2, and 9–23. Plea 18 was however withdrawn by the defendant during trial.

A jury returned a verdict in favor of the plaintiff in the amount of $400.

Only the court's rulings on the demurrers to pleas 6, 7, and 8 are assigned by the appellant, defendant below, as error, same being appellant's assignments of error numbers 13, 14, and 15.

Plea 6 is in set-off, and is based on the alleged breach of the verbal contract of employment made between the plaintiff and defendant. Said alleged breach is stated in plea 6 in the following terms: "that the plaintiff breached said contract of employment in that he did not perform the duties usual and proper in such employment, and did not conduct said business in a careful, skillful and diligent manner, but on the other hand neglected his duties and conducted said business in a careless, unskillful and dilatory manner, to the defendant's damage in the said sum of $2,127.28."

A plea of set-off or recoupment should be as certain as to damages sought to be set-off, as if it were an original action brought by the defendant for that particular demand. Buford v. Graden, 5 Ala. App. 421, 59 So. 368; Dawson v. Haygood, 24 Ala.App. 481, 136 So. 876; Kilgore v. Arant, 25 Ala.App. 356, 146 So. 540; Greer v. Malone-Beall Co,, 180 Ala. 602, 61 So. 285. This doctrine makes apparent the correctness of the action of the lower court's action. In addition no facts tending to show a breach were set forth. The allegations were merely the conclusions of the pleader. Worthington v. Davis, 208 Ala. 600, 94 So. 806.

Appellant's assignments 14 and 15 relate to the lower court's action in sustaining his demurrers to pleas 7 and 8. Both pleas are in recoupment, and are identical except that in plea 7 the appellant alleges that defendant "expressly agreed, or it was necessarily implied from the terms and nature of the employment" that the appellee would perform certain duties in and about the business in a certain manner.

Plea 8 adopts plea 7, but strikes out the words of implication of the terms of the contract and inserts in lieu thereof the words "and the plaintiff agreed," etc.

In plea 7 the alleged breach or breaches of the contract of employment by the plaintiff are set forth in the following terms:

"1. He did not devote himself to said employment during the usual business hours but on at least two occasions absented himself from the business for at least half a day at a time and on numerous other occasions for shorter but appreciable periods of time. 2. He did not carefully, skillfully and diligently devote himself to said employment. He did not have an interest in said business and did not evidence any interest in said business, but on the other hand was indifferent to said business and evidenced his said indifference to the customers of the business. 3. He repeatedly made disparaging remarks about his employer, the defendant, to the other employees of the business. 4. He did not efficiently and competently look after the affairs of said business, but managed the said business inefficiently and incompetently. 5. He did not push the sales of said business but neglected them. 6. He did not dress the show windows of the business out of business hours, but neglected the customers during the business hours by dressing the show windows during such time. 7. He was not courteous to customers. 8. He favored later customers over earlier ones by letting them have incoming scarce merchandise and did not deliver such scarce merchandise in substantially the order in which the purchases had been made. 9. The plaintiff did not exercise care, skill and judgment in the purchase of merchandise, but over bought cheap and unguaranteed merchandise. 10.

The plaintiff did not carry out instructions of the defendant, the owner, in the conduct of said business, in that the defendant instructed the plaintiff to guarantee to customers all merchandise sold and to make good to the customers all merchandise found defective, and the plaintiff neglected or failed so to do."

Before reciting the alleged breaches the defendant had in plea 7 set forth alleged corresponding stipulations in employment contract which were covered by the above alleged breaches.

Where a contract contains several stipulations, the pleader may in each count assign as many breaches as he pleases; but each breach must be upon a distinct stipulation in the contract. On the other hand he cannot assign two breaches in the same count, of one and the same stipulation, without bringing about an objectionable duplicity in the count. Worthington v. Davis, supra. Such was the result here. The court therefore committed no error in sustaining the demurrers to pleas 7 and 8.

The defendant below in 1946 was engaged in electrical appliance and automobile accessory business in Auburn, under the name of City Appliance Company.

The evidence introduced by the plaintiff tended to show that he entered into a verbal contract with the defendant on 3 January 1946 by which he was employed as sales manager for defendant's appliance company. The plaintiff under the contract was to perform his duties under the supervision of the defendant, who was to do all the buying. According to the plaintiff's evidence he was to receive a salary of $35 per week, to be increased to $50 per week as merchandise became more procurable, and in addition he was to receive a commission equal to ten per cent of the over all or gross sales.

Plaintiff entered into his employment under the terms of the above contract, but on 15 June 1946, the defendant requested his resignation. Upon this request the plaintiff demanded the commissions he alleged to be due him and at that time the defendant figured up such amount and said it

amounted to $852.00, which the plaintiff agreed to accept.

The defendant asked plaintiff to return on 17 June 1946 to receive such payment. Plaintiff returned on 17 or 18 June, and at that meeting the defendant tendered him a check for $150, with the remark he could "take it or leave it."

Plaintiff testified that when defendant presented him this check he had written thereon "For Expenses," for income tax purposes.

Upon presenting this check to the drawee bank the plaintiff was informed that payment thereon had been stopped by the defendant.

Plaintiff further testified that he has received no part of the commissions alleged by him to have been agreed on, or any part of the amount of the $150 check.

For the defense the defendant testified he had agreed to pay the plaintiff a salary of $35 per week, to be raised to $50 per week when merchandise became more plentiful, and a commission of ten per cent of the net profit of the business, to be paid at the end of the year when an inventory was to be taken and the books audited, and it could be determined if a profit had been made.

The defendant further testified that at the time he had given the plaintiff the $150 check he had gone over the deposits and gross sales of the business with plaintiff to show him that there were no profits, but that such records showed a loss of roughly $800. He did at this time give the plaintiff the $150 check "just to make him happy." Payment on this check was stopped because of a personal difficulty between the two later in the afternoon.

The defendant further testified that this $150 check was an outright gift by him to the plaintiff, and that it was at the plaintiff's request that he wrote the notation "trav. expenses 3 months" thereon.

The defendant gave further testimony, as did other defense witnesses, tending to establish the pleas filed by the defendant.

Appellant's assignment of error No. 1 asserts that the trial court erred in excluding from the evidence and consideration of the jury the testimony of the witness Hugh D. Whatley, to which ruling the defendant had duly excepted.

Mr. Whatley testified as a public accountant whose qualifications were admitted.

Over the strenuous and repeated objections of the plaintiff Mr. Whatley was permitted to testify as to the loss sustained by the business during plaintiff's employment. To arrive at the loss it was necessary that Mr. Whatley make what he termed an "estimated inventory" as of 2 January 1946, the date of the beginning of plaintiff's employment to compare with the inventory of 15 June 1946, the date of the termination of plaintiff's employment.

As to how he arrived at this "estimated inventory" Mr. Whatley testified as follows:

"A. I took the sale of the business from the beginning of the business until June 15, 1946, and took the total purchases—the total sales were $20,637.52, and I took the total purchases for that period, which was $25,931.74, and from the total purchases I deducted the actual inventory on June 15th, which was $8321.67, leaving the net goods sold at $17,610.07. From the sales for the period I deducted this cost of merchandise, leaving a gross profit of $3027.45. That was divided by the total sales for the period leaving 85.33% as the cost of the merchandise sold. So I took the total sales from the beginning of the business to January 2nd, which was $33,534.83, and the cost of sales which was at 85.33%, was $3316.16, so leaving an inventory on December 31 at $2078.09, and on January 2nd there was a sale of $369.70, and from that sale I deducted the cost of 85.33%, and from the inventory on December 31st I deducted the cost of the merchandise which was sold on January 2nd, which amounted to $315.47, leaving an inventory on *December* 2nd of $1762.62."

By further accounting procedures Mr. Whatley determined the net loss of the business during plaintiff's employment to have been $2127.28.

Mr. Whatley further testified that this estimated inventory was accurate as far as possible to calculate on the records avail-

able. As to its accuracy Mr. Whatley stated: "it is hard to say what the percentage is, whether it be 1%, 2%, or 5%, I wouldn't say what percentage."

Defendant established his business in October or November 1945, the exact date being uncertain from the evidence. Mr. Whatley's testimony was directed to showing a net loss during plaintiff's term of employment. His testimony and the other evidence presented by this defendant, omits to show that any profits were ever realized in this business. At the conclusion of Mr. Whatley's testimony the court granted plaintiff's motion to exclude it. Hence assignment of error No. 1.

Without in any way intimating that the court may have erred in excluding this testimony on other grounds, we think that clearly in its broader aspect of recoverable damages the court's action was entirely correct and we prefer to treat the question in that aspect, rather than its narrower phases.

The onus was on the defendant to establish his pleas of set-off and recoupment. These pleas were based on an asserted loss of profits. The material question so raised is the award of damages resulting from such asserted loss.

In Brigham & Co. v. Carlisle, 78 Ala. 243, 56 Am.Rep. 28, our Supreme Court enunciated the following doctrines pertaining to the recovery of damages for loss of profits:

"But there are damages, which are in the contemplation of the parties at the time of making the contract, and are the natural and proximate results of its breach, which are not recoverable. The parties must necessarily contemplate the loss of profits as the direct and necessary consequence of the breach of a contract, and yet all profits are not within the scope of recoverable damages. There are numerous cases, however, in which profits constitute, not only an element, but the measure of damage. While the line of demarcation is often dim and shadowy, the distinctive features consist in the nature and character of the profits. When they form an element constituent of the contract, their loss the natural result of its breach,

and the amount can be estimated with reasonable certainty, such certainty as satisfies the mind of a prudent and impartial person, they are allowed. The requisite to their allowance is some standard, as regular market values, or other established data, by reference to which the amount may be satisfactorily ascertained. Illustrations of profits recoverable are found in cases of sales of personal property at a fixed price, evictions of tenants by landlords, articles of partnership, and many commercial contracts.

"On the other hand, 'mere speculative profits, such as might be conjectured would be the probable result of an adventure, defeated by the breach of a contract, the gains from which are entirely conjectural, and with respect to which no means exist of ascertaining even approximately the probable results, can not, under any circumstances, be brought within the range of recoverable damages.' 1 Suth. on Dam. 141. Profits speculative, conjectural or remote, are not, generally, regarded as an element in estimating the damages. In Pollock v. Gantt, 69 Ala. 373 (44 Am.Rep. 519), it is said: 'What are termed speculative damages—that is possible, or even probable gains, that it is claimed would have been realized, but for the tortious act or breach of contract charged against a defendant—are too remote, and can not be recovered.' The same rule has been repeatedly asserted by this court. Culver v. Hill, 68 Ala. 66 (44 Am.Rep. 134); Higgins v. Mansfield, 62 Ala. 267; Burton v. Holley, 29 Ala. 318 (65 Am.Dec. 401); White v. Miller, 71 N.Y. 118 (27 Am.Rep. 13); French v. Ramage, 2 Neb. 254; 2 Smith's Lead. Cases, 574; Olmstead v. Burke, 25 Ill. 86.

* * * * * *

"Profits are not excluded from recovery, because they are profits; but, when excluded, it is on the ground that there are no criteria by which to estimate the amount with the certainty on which the adjudications of courts, and the findings of juries should be based. The amount is not susceptible of proof. In 3 Suth. on Dam. 157, the author discriminately observes: 'When it is advisedly said, that profits are uncer-

claims of this defendant. The speculative character of the defendant's claim of loss is even more increased by certain testimony of his witnesses. Mr. Warren, a former employee of the defendant, testified "I may have overstocked him but he didn't complain." The defendant himself testified that the plaintiff was not one hundred per cent responsible for the loss, but that he was charging him with all losses. Mrs. Lambert, defendant's bookkeeper, testified "Well, things are still on the shelf, things which Mr. Jefferson purchased, and they will never be sold; such merchandise he had been instructed to buy by Mr. Lambert." Furthermore, the defendant testified that he made purchases for the business, as well as authorizing the plaintiff to do so. It also appears that the defendant, Mrs. Lambert, and possibly others made sales in the store in addition to the plaintiff.

■ Mr. Whatley's testimony merely tended to establish that there had been a loss during plaintiff's term of employment. It furnished no basis whatsoever for an approximately accurate estimation in money of the damages resulting from plaintiff's alleged breaches of the contract of employment. Such damages are as speculative, conjectural, and uncertain with his testimony as without it. It is our opinion therefore that no injury could have resulted to the defendant from the court's action in excluding such testimony.

Appellant's assignment of errors 2, 3, and 4 are as follows:

"2. The trial court erred in sustaining objection to the following question asked the witness Warren by the appellant: 'You have a judgment as to the maximum amount of profits that could be expected from a business such as this one over there, the City Appliance Company?' to which the appellant duly reserved an exception.

"3. The trial court erred in sustaining objection to the following question asked the witness Warren by the appellant: 'I will ask you if ten per cent of the gross sales would be as much as could be reasonable expected on a business of that kind?'; to which the appellant duly reserved an exception.

"4. The trial court erred in sustaining objection to the following question asked the witness W. P. Humphries by the appellant: 'Mr. Humphries, what are the maximum reasonable profits made in a business of that kind?'; to which the appellant duly reserved an exception."

The witness Warren, to whom the questions set forth in assignments 2 and 3 were addressed, testified that he had been connected with defendant's business for approximately 30 days as manager. He is presently employed as purchasing agent for the Martin Theatres of Columbus, Georgia.

Previously Mr. Warren had been with the Woolworth Company for 13 years and with Sears for 5 years. While with Sears he "was buyer of soft lines, manager of that division." Sears sold some of the larger items handled by defendant, "the hard lines, refrigeration stuff." "Soft lines" are "household furnishings," "soft goods."

Objections to the above questions, sustained by the trial court were based on the qualifications of the witness to give the testimony sought.

■ Whether a witness' qualifications to state his opinion are established, rests largely in the discretion of the trial court. 32 C.J.S., Evidence, § 458. This discretion will not be reviewed except in cases where it is clearly made to appear that the ruling was unjust and worked an injury to the defendant's cause. Morris v. State, 25 Ala.App. 494, 149 So. 359; Hollingsworth v. Corbin, 212 Ala. 104, 101 So. 843. No such abuse of discretion on the part of the trial court is in our opinion present in the instant rulings.

■ The witness Humphries, to whom the question set forth in assignment 4 was addressed, testified that he had been in a similar appliance business in the City of Opelika for some three years. He had been in defendant's store, but did not know the date of his visit or visits.

■ No error can be placed on the trial court in sustaining the objection to the question propounded the witness Humphries for the same reasons set forth in discussion of assignments 2 and 3. In addition we think that the testimony sought

to be elicited because of its conjectural probative nature should not have been admitted. The sales, or lack of sales, as influencing profits, are influenced by various causes, such as the location in a certain city, and a particular location in such city; the arrangement of the merchandise; the costs and sales price of the items offered; the amount spend for advertising; competition, and various contingencies too numerous to mention. Bromberg v. Eugenotto Construction Co., 162 Ala. 359, 50 So. 314.

 Appellant's assignments 5, 6, 7, and 8, set up as error the court's action in sustaining objections propounded to the plaintiff on cross examination to the following questions:

"Will you explain to the jury how his income tax would be less whether he paid $35.00 for salary or for expenses?"

"Again I will ask you how there would have been any difference in putting it 'expense acct.' instead of 'salary'?

"You think he couldn't have charged salaries in the store as expenses in the store?

"Don't you know the deduction would be the same whether expenses or whether salaries?"

On direct examination the plaintiff had testified in connection with one of the checks given him by defendant had been marked "Expense Account" instead of "Salary" for income tax purposes "as Mr. Lambert put it."

The plaintiff testified he had never made out an income tax return for a business.

It is our opinion that the above questions called for opinion evidence by a qualified expert. The plaintiff was not so qualified. No error therefore resulted from the court's action in sustaining the objections interposed to the above questions.

Appellant's assignment of error No. 9 asserts that the court erred in sustaining the objection to the following question propounded to the plaintiff on cross examination:

"Wasn't a young lady staying around the store a great deal about that time?"

It is our opinion that the damages sought would have been as speculative with the above testimony as without it. No injury therefore inured to the defendant in sustaining the objection to the above question.

 Appellant's assignment No. 10 is as follows:

"10. The trial court erred in declining to permit the court reporter or appellant's counsel to mark for identification an inventory in the handwriting of Jane Lambert and about which the witness John Lambert was testifying."

In this connection the record shows that in examining defendant's witness John Lambert the defendant asked that a certain inventory be marked. The record pertaining thereto is as follows:

"Mr. Walker: We ask that it be marked.

"Mr. Tyner: If the court please, we object to it.

"The Court: What is the objection.

"Mr. Tyner: We object to the introduction of this inventory because the witness has just said it was not the original inventory, but a copy of the original inventory.

"The Court: It is not admissible, Mr. Walker, sustain the objection.

"Mr. Tyner: It is secondary evidence, the books could be produced.

"Mr. Walker: Did the court sustain the objection?

"The Court: That is the ruling now.

"Mr. Walker: We would like to have it marked.

"The Court: Sustain the objection.

"Mr. Walker: The court doesn't want me to put any identification on it?

"The Court: No, sir.

"Mr. Tyner: This identifying is going to get me all mixed up.

"Mr. Walker: I have tried a lot of cases and this is the first time that I could not have a paper marked for identification.

"The Court: That may be true, Mr. Walker, but we are doing the best we can.

"(Reporter's Note: This document above referred to will be offered later during the trial of this case and will be copied herein when it is offered.)"

78

The applicable statute, Section 827(1), Title 7, Code of Alabama 1940, provides that:

"He" (the court reporter) "shall also identify and copy all documents offered in evidence in the order in which offered."

This document had not been offered in evidence at the time of the above colloquy. Furthermore no exception was reserved to the court's ruling. It also appears that the document was later offered in evidence, was marked for identification and appears in the record. Certainly no injury of which he can reasonably complain could be said to have inured to the defendant under the above circumstances.

[18] Appellant's assignment No. 11 asserts that the trial court erred in sustaining the objection of the plaintiff to the admission in evidence of the inventory marked "Jane Lambert."

The above inventory was a copy of an inventory made by persons other than witness Jane Lambert, the figures thereon being copied by Mrs. Lambert from original bills, which were not introduced in evidence. This inventory was gotten up by Mrs. Lambert shortly after the plaintiff left defendant's employment to assist Mr. Whatley in his audit of the defendant's business.

Transcripts from account books of original entry are inadmissible, nor is a record or memorandum not made contemporaneously in the regular course of business. Booker v. Benson Hardware Co., 216 Ala. 398, 113 So. 256; Brett v. Dean, 239 Ala. 675, 196 So. 881. The above inventory is infected with both of the above mentioned vices.

Appellant's assignment No. 12 is that the lower court erred in overruling his motion for a new trial. No exception was reserved to the court's action in these premises.

Actually all the grounds set forth in the motion for a new trial have been covered in our discussion above pertaining to the assignments of error other than those grounds in support of the motion pertaining to the sufficiency and weight of the evidence.

In George Wilkerson, doing business as Standard Motor Sales Co., v. J. B. Johnston, 33 Ala.App. 442, 34 So.2d 626, 627, this court concluded that:

"(1) If the motion for a new trial is based solely on the status of the record and must depend for a decision on matters only contained therein, Section 214 has application. In this event it is not necessary to reserve an exception to the ruling of the court on the motion, and a review is authorized and presented nevertheless.

"(2) If the motion for a new trial is predicated on any matters not of the record proper and the court must go beyond this source for information upon which to base a decision, Section 764 has application. In this event an exception must be reserved to the ruling of the court on the motion if a review is expected. Sections 214 and 764, supra, as found in Title 7, Code of 1940.

"The following authorities support our view: Delbridge v. State, 242 Ala. 677, 8 So.2d 160; Prater v. Prater et al., 244 Ala. 136, 12 So.2d 417; Alabama Gas Co. v. Jones, 244 Ala. 413, 13 So.2d 873; Arnold v. State, 33 Ala.App. 146, 30 So.2d 587; Clark v. State, 33 Ala.App. 382, 34 So.2d 169."

For the reasons set out above it is our opinion that this record is free of error materially injurious to the substantial rights of the appellant and it is therefore due to be affirmed. It is therefore so ordered.

Affirmed.

### After Remandment.

On certiorari the Supreme Court held that we were in error in holding that the demurrer to pleas six, seven, and eight, each separately, was properly sustained. The Supreme Court approved our conclusion that the trial court properly excluded the evidence of Mr. Whatley, the accountant, as to the amount of loss during the period of plaintiff's employment.

The cause was by the Supreme Court reversed and remanded to us for further proceedings.

In the course of its opinion the Supreme Court pointed out that: "The Court of Appeals does not deal with the matter of injury in such rulings" (the sustaining of

demurrers to pleas six, seven, and eight by the lower court) "by reason of other possible pleas which present the same questions. We will not do so, but it should be considered by the Court of Appeals on a remand of the cause."

Plea six sets up the alleged contract existing between the plaintiff and defendant, and that the plaintiff "agreed to work for the defendant in said business as such sales manager and to perform the duties usual and proper in such business in such employment and to conduct said business as sales manager in a careful, skillful, and diligent manner. The defendant avers that he in all things performed his said contract * * *, but that the plaintiff breached his said contract of employment in that he did not perform the duties usual and proper in such employment and did not conduct said business in a careful, skillful and diligent manner, but on the other hand neglected his duties and conducted said business in a careless, unskillful and dilatory manner, to the defendant's damage, etc."

When the demurrer to plea six was sustained the defendant filed plea seven. Demurrers were sustained to this plea. Defendant then filed pleas eight through twenty-three. Plea eighteen was however later withdrawn. Plea eight is identical with plea seven except that the words "and the plaintiff agreed" are substituted in lieu of the words "and the plaintiff expressly agreed, or it was necessarily implied from the terms and nature of the employment" as same appear in plea seven. These two pleas, seven and eight, set up some nine or ten allegations of expressed duties of the plaintiff resulting from the contract, and their respective breaches.

Demurrers to these pleas were sustained as to plea eight.

The remaining pleas, to which the demurrers were overruled, in our opinion set up individually all matters that were set up in pleas six, seven, and eight.

In his brief filed on remandment of this cause appellant's counsel asserts that as a result of the court's ruling in sustaining the demurrer to plea six the defendant was impelled to try his counterclaim in a straight jacket, in that he was deprived of the right to try the case under the averments of neglect of duties asserted in plea six.

It is noted however that in plea twelve defendant asserts as a breach of the contract that the plaintiff "did not carefully, skillfully, and diligently devote himself to said employment," and in plea fifteen the breach asserted is that plaintiff "did not efficiently and competently look after the affairs of said business, but managed the said business inefficiently and incompetently."

 After careful examination of the pleas on which this trial proceeded we are clear to the conclusion that all matters of defense, evidential and otherwise, were available under these pleas that were available under pleas six, seven, and eight, to which the demurrers were sustained. The action of the court in sustaining the demurrers to pleas six, seven, and eight therefore did not prejudice the defendant, and the error was without injury. Reversal should not therefore be predicated on these rulings Aplin v. Dean, 231 Ala. 320, 321, 164 So. 737; Pittman v. Calhoun, 231 Ala. 460, 165 So. 391; American National Bank and Trust Company v. Banco Nacional, etc., 238 Ala. 128, 189 So. 191; Inter-Ocean Casualty Company v. Anderson, 245 Ala. 534, 17 So.2d 766.

Affirmed.