37 So.2d 142

### TRAMMELL v. ROBINSON.
#### 5 Div. 249.

Court of Appeals of Alabama.
Oct. 4, 1948.

Jacob A. Walker, of Opelika, and R. C.
Wallace, of LaFayette, for appellant.

Chas. S. Moore and Hines & Hines, all of LaFayette, for appellee.

HARWOOD, Judge.

The appellant, F. B. Trammell, Jr., was the plaintiff below. The defendant was W. F. Robinson.

The complaint contained four counts, the first three being common counts, respectively, for money due by account, for work and labor done, and for goods furnished.

The fourth count was a special count, wherein the plaintiff sued defendant for the same amount stated in the common counts, for work done under an alleged special contract for the grading of runways and for working a road and for lumber furnished in such work, under a contract made by plaintiff with the defendant "whereby the plaintiff during the term extending from February 1, 1946, to October 26, 1946, furnished a bulldozer and an operator for grading said runway for planes, and for constructing a road and furnishing materials, towit, lumber, for the construction of

a building on said premises." This count further claimed an original contractor's lien on the premises described and prayed that the lien be established and the property be sold for the satisfaction of the lien.

The defendant filed a plea of the general issue (pleas 1 and 2), and four special pleas. Three of these special pleas were in recoupment, and are as follows:

"3. Defendant claims of the plaintiff due him by recoupment $5000.00 damages arising out of the same transaction alleged in the complaint the foundation of this suit, for breach of an oral contract entered into by plaintiff and defendant on or about, the 1st day of March, 1946, by the terms of which contract plaintiff agreed with defendant for plaintiff to pull trees by the stump off of proposed runway on the property of the defendant as described in the complaint and to move all brush, stumps and wood off said proposed runway, and to complete the pulling of trees and removing the brush, stumps and wood off the proposed runway in six or eight weeks, and defendant agreed to give plaintiff all the trees, brush, stumps and wood on said runway and on part of the property described in the complaint as compensation for the above, and the defendant avers and states that said plaintiff failed and refused to perform his part of the contract all of which the defendant lost by reason of the plaintiff's breach of the contract as aforesaid and in this; the plaintiff left many stumps, logs, brush and wood on said proposed runway but took the bulk of the merchantable timber and wood off defendant's property and defendant has gone to much expense in having said stumps, logs, brush and wood moved off the proposed runway. And defendant avers that he complied with his part of the agreement.

"4. Further answering said complaint defendant says that the plaintiff is due him by recoupment $690.00 damages for breach of a verbal agreement, said damages arising out of the same transaction alleged in the complaint the foundation of this suit, entered into by plaintiff and defendant on or about the 1st day of April, 1946, by which the plaintiff agreed with the defendant to cut all trees off a runway on property of defendant described in the bill of com-

plaint and to furnish 15,000 feet of lumber to the defendant, and defendant agreed to give plaintiff trees, wood, stumps and logs on said runway and on part of defendant's property, and defendant avers and states that plaintiff failed and refused to perform his part of the contract in that he did not cut all of said trees on said runway and delivered only 1200 feet of lumber to the damage of the defendant for the breach of the contract as aforesaid. And the defendant alleges that he has fulfilled his part of the contract."

"6. Further answering said complaint as he says that the plaintiff is due him by recoupment for work and labor done, the sum of $1900.00 arising out of the same transaction alleged in the complaint the foundation of this suit, extending from, to-wit: March 1, 1946, to December 25, 1946, which sum of money, with interest thereon is still unpaid."

Plea 5 was filed specifically to Count 4, and to no other count, and averred that "the supposed cause of action therein mentioned did not accrue to the plaintiff within six months next before the filing of the claim or lien and is therefore barred by the statute of limitation."

Demurrers were filed to each of the pleas in recoupment, the grounds assigned going to the sufficiency of the averments of the pleas, and also asserting that said pleas related to a contract different from the claim sued on.

Demurrer to plea 5 was on the grounds that said plea was not an answer to the whole of count 4, but only one aspect thereof, and that the limitation of six months did not apply to said count.

Plaintiff's demurrers to defendant's pleas were overruled, except as to plea 2, to which the demurrer was sustained. For answer to pleas 3, 4, and 6, plaintiff averred that the allegations thereof were untrue.

Issue was thereupon joined upon defendant's plea of the general issue, on plea 5, and on plaintiff's answer of the general issue to pleas 3, 4, and 6.

The jury returned a general verdict in defendant's favor and assessed his damages at $500.

Plaintiff's motion for a new trial was overruled, and plaintiff duly perfected his appeal to this court.

The evidence presented by the plaintiff in the main consisted of testimony of the plaintiff. He testified that about 1 February 1946, the defendant told him he was building an airport in Tom's bend and wanted the plaintiff to pull the trees down on the runways with his tractor. Plaintiff entered into an agreement with defendant to do this work, and was to receive the saw timber and wood from the pulled trees as compensation. According to plaintiff no limitation as to the time within which the work was to be done was contained in the agreement. About two weeks later, or around the middle of February the plaintiff entered upon the work of pulling down the trees.

After entering upon this contract, the plaintiff acquired a bulldozer on or about 2 April 1946. To operate this bulldozer plaintiff employed one Paul Ray, at wages of one dollar per hour.

Plaintiff asserts that about four weeks after acquiring this bulldozer defendant requested that he do the preliminary grading on the runways with the bulldozer in order that defendant could finish the grading with a pan grader. For this work with the bulldozer plaintiff was to receive eight dollars per hour.

Still later plaintiff asserts a third contract was entered into between him and defendant whereby plaintiff was to use the bulldozer in grading a road that led into the airport.

Plaintiff testified that he obtained about $400 worth of timber and about $100 worth of wood from the trees that he pulled down.

Plaintiff claimed that defendant was due him $1976 on the runway grading agreement, $124 for grading the roadway, and $77.50 for lumber furnished defendant at his request, or a total of $2201.50.

Written memoranda of dates and hours the bulldozer was used, kept by plaintiff on a weekly basis, was introduced in evidence.

According to plaintiff the last of the work done by him on the runways was during the week of August 3, 1946, and the last of the work done on the road was on 23 October 1946.

On 22 January 1947 plaintiff filed his notice of claim of a lien on the defendant's airport property, setting out that the lien was claimed to secure an indebtedness of $2201.50 with interest from 26 October 1946, for work done in grading runways, and roadwork, and lumber furnished on the land described in the claim.

Mr. Hollis Allen, a civil engineer who did grading work with a tractor and pan, testified that the reasonable rental of a bulldozer with operator was $8 to $10 per hour.

For the defense Mr. Robinson, the defendant, testified that he saw the defendant first on 25 February 1946. At this time he learned that plaintiff had a tractor. Defendant then told plaintiff he intended purchasing a piece of property to make into an airport and inquired if plaintiff could pull over the trees on the proposed right of ways. They then went to the property and plaintiff said he could do the work. Defendant then told plaintiff that as soon as he completed the deal for the airport site he would see him. According to defendant no agreement was made at this time.

Defendant obtained the title to the airport site on 27th or 28th of February 1946. Thereafter about the 1st or 2nd of March 1946 he again contacted the plaintiff and they entered into an agreement whereby plaintiff was to pull down the trees on the right of ways and drag them and the stumps off, for which work the plaintiff was to receive the timber and wood from the trees so pulled. Defendant further asserted that plaintiff agreed to so clear the right of ways in from six to eight weeks from the date of the agreement, though he was to have all the time he wanted to remove the timber and wood after it had been pulled off the right of ways. These right of ways were approximately 400 feet wide and one half mile long.

Defendant further testified that at the time the agreement was made he had shown plaintiff the boundaries of the proposed right of ways, and had further shown him "in the same bunch of timber we talked about" a stand of "might heavy timber" in a lagoon at one end of a runway, and had told

the plaintiff he had entered into an agreement with a Mr. Sorrell concerning this timber whereby Mr. Sorrell was to saw the trees off at the stump and in return was to deliver to defendant 15,000 feet of lumber from the trees so removed.

Around 1st of April the defendant alleges he called plaintiff's attention to the fact that the plaintiff had, after pulling the trees on the right of way only a few days, gone into the "Sorrell" tract of trees and pulled part of those trees down. Defendant said that upon his calling this to plaintiff's attention plaintiff said he would just take the trees in the lagoon and deliver 15,000 feet of timber back to defendant as Sorrell had agreed to do. Defendant asserted that the plaintiff had delivered to him only 1200 feet of timber. In this connection Mr. Scroggins, who had been in the timber and wood business for 20 years, testified that the value of dressed lumber was from $65 to $75 per thousand feet, and of undressed lumber from $52 to $55 per thousand feet.

Reverting to the work on the runways the defendant testified that the plaintiff pulled down the merchantable trees and sawed off the timber, leaving the stumps and brush on the runways. Despite repeated requests he could never get plaintiff to remove this debris so he could proceed with grading the runway. As a result defendant had to do this work with his own tractor, using his tractor between 240 and 250 hours in this work. Defendant asserted that the use of his tractor was worth $8 per hour.

Defendant testified that in addition to the logs he removed, plaintiff also removed between 200 and 250 cords of wood from the runway site.

Defendant denied that he had ever entered into any agreement with the plaintiff for the grading of the runways by the plaintiff's bulldozer.

According to defendant the only times that plaintiff used his bulldozer other than in connection with pulling trees was when it was used to push some dirt into holes on the runways. According to defendant the plaintiff was away from the airport a great part of the time and he, defendant, for four or five weeks, supervised and worked with the negro crew that plaintiff left there to do the work, and also had worked on plaintiff's tractor, filed saws for him, etc. When plaintiff asked him what he owed him for this defendant suggested he push the dirt into the holes as payment, and plaintiff had been "glad to do it" as it saved him "putting out the cash."

Defendant further denied that he had made any agreement with the plaintiff pertaining to the grading of any road, but asserted that plaintiff did some work on an alternate road leading to the airport in order to facilitate the hauling of the logs removed from the airport by the plaintiff.

According to defendant the plaintiff did no work on the airport site after the middle of July, 1946.

For the defense Mr. Scroggins, the witness above mentioned, further testified that he had counted the trees on the proposed runways as he was interested in buying them. He judged that there was between 70 and 75 thousand feet of "saw timber" on the runways, worth $10 per thousand feet on the stump, and about 200 cords of wood on the runways and road worked by plaintiff, worth $3 per cord on the stump.

In rebuttal the plaintiff testified he got only about $400 worth of saw timber off the runways; he did not know how much wood he may have gotten, but testified it was worth about $1 per cord on the stump.

■ In Lawton v. Ricketts, 104 Ala. 430, 16 So. 59, recoupment is defined as the right of the defendant to claim damages from the plaintiff, either because he has not complied with some obligation of the contract on which he sues or because he has violated some duty which the law imposes on him in the making or performance of the contract.

■ The right of recoupment springs out of the contract or transaction between the parties. Therefore a plea which sets up a breach of a contract in support of a recoupment must be as distinct and certain as if it were a complaint for the breach of the same contract. Ansley v. Bank of Piedmont, 113 Ala. 467, 21 So. 59, 59 Am.St. Rep. 122.

Pleas 3 and 4 allege a breach by the plaintiff of the contract on which he based his suit, set up facts sufficient to show the breach, and that the defendant suffered directly the damages claimed as a consequence of the breach.

Pleas 3 and 4 were, in our opinion, sufficient and no error can be attached to the court's action in overruling the demurrers thereto. Carolina-Portland Cement Co. v. Alabama Construction Co., 162 Ala. 380, 50 So. 332. Appellant's assignments of error 4 and 5 assert respectively alleged error on the part of the lower court in overruling the demurrers to pleas 3 and 4. It is our opinion that such assignments are without merit.

Appellant's counsel argue in brief that the appellee has wholly failed to establish the averment in the pleas that the damages claimed in the pleas arose out of the same transaction alleged in the complaint as the foundation of the suit. Appellant's counsel contend that the great preponderance of the evidence shows that there were several contracts made between the appellant and appellee, namely, the contract for the clearing of the runways; the contract for the grading of the runways; the contract pertaining to the "Sorrell tract" of trees; and the contract for the grading of the road, and that while the contract sued on was the one relating to the grading of the runways and road, plea 3 related to the pulling of the trees on the runway, and plea 4 related to the agreement concerning the "Sorrell tract" of trees.

The defendant's testimony was to the effect that only one agreement was ever made and that was the one pertaining to the pulling of the trees on the runways. He denied specifically that any agreement was ever made relative to the grading of the runways or the road.

Again, according to defendant, when he called to plaintiff's attention that he had pulled trees in the Sorrell tract, whereas under the contract between plaintiff and defendant plaintiff was to limit his operations to the boundaries of the runways, the plaintiff then suggested that he continue in the Sorrell tract and agreed to deliver to defendant 15,000 feet of lumber as Sorrell was to do.

Thus purely a question of fact was raised as to whether there was one contract or several. The jury, after hearing the evidence, resolved this question in favor of defendant's single contract contention. In our opinion there is sufficient evidence to justify the jury's conclusion. We are therefore bound by the jury's findings in this premise.

It is our opinion that under the defendant's evidence relating the agreement concerning the Sorrell tract of timber the jury was fully justified in concluding that said agreement sprang out of the contract relating to the pulling of the trees on the runways, and was so closely akin thereto as to be a part thereof. Defendant denied any agreement pertaining to the use of the bulldozer in grading the runways and road leading to the airport. The jury accepted the defendant's contention in this matter. Pleas 3 and 4, and the evidence submitted in support of such pleas were therefore confined to the transaction forming the basis of this suit.

Appellant's assignment of error No. 1 is to the effect that the lower court erred in refusing to give at appellant's (plaintiff's) request the following written charge:

"The court charges the jury that if you believe the evidence in this case you cannot find for the defendant on Pleas 3, 4, and 6."

Under the evidence it is our opinion that the lower court properly refused the above general affirmative charge requested by the plaintiff as to pleas 3 and 4. This being so no error can be attached to the lower court's refusal in giving the above charge regardless of its applicability to plea 6, the charge clearly being bad in part. In addition the above charge is a belief charge, and in civil cases affirmance or reversal will not be predicated on refusal or the giving of such "belief" charges. Cain v. Skillin, 219 Ala. 228, 121 So. 521, 64 A.L.R. 1022, and cases therein cited. See also Wesson v. State, 251 Ala. 33, 36 So.2d 361. There is therefore no merit in appellant's assignment of error No. 1.

Under his assignment of error No. 1 appellant's counsel also argues that appellee wholly failed to prove his averment in plea 4 that appellant agreed to *cut* all the trees off of a runway, in that appellee's evidence showed that appellant had *pulled* trees in the "Sorrell tract," where he was not supposed to operate, and when this was called to his attention he agreed to make recompense by delivering to appellee 15,000 feet of lumber.

The essence of the damages complained of in plea 4 was the failure of the appellant to deliver the timber he agreed to deliver. Whether the trees from which this timber was processed were pulled or cut is not particularly material to the ultimate rights involved. No objections were interposed by appellant to the evidence relating to the method these trees were felled, nor were any instructions requested pointing out such variance i. e. that the trees were pulled rather than cut. Certainly, even if material, which we doubt, the variance between the allegation in the plea that appellant agreed to *cut* the trees, whereas the evidence introduced by the appellee tended to show that the agreement was to *pull* the trees, this variance between allegation and proof was waived by the absence of proper objection, or of proper instructions calling the court's attention thereto, Gilliland v, Hawkins, 216 Ala. 97, 112 So. 454, and appellant's right to claim a reversal for such alleged variance was by such failure to object or request instructions likewise waived. Futvoye v. Chuites, 224 Ala. 458, 140 So. 432. See also Circuit Rule No. 34, Code 1940, Tit. 7 Appendix.

Appellant's assignment of error No. 2 is that the lower court erred in overruling the appellant's demurrer to Plea No. 6 set out above.

Plea 6 is conclusry in character and the demurrer thereto properly should have been sustained. However, all matters, evidential and otherwise, available under plea 6 were properly available under pleas 1, 3, and 4. The action of the court in overruling the demurrer to plea 6 therefore did not prejudice the defendant, and the error was without injury. Aplin v. Dean,

231 Ala. 320, 321, 164 So. 737; Pittman v Calhoun, 231 Ala. 460, 165 So. 391; Amer ican National Bank and Trust Company v. Banco Nacional, 238 Ala. 128, 189 So. 191; Inter-Ocean Casualty Co. v. Anderson, 245 Ala. 534, 17 So.2d 766.

Appellant's assignment of error No. 3 asserts that the trial court erred in overruling appellant's demurrer to plea No. 5. The substance of plea 5, and the demurrer thereto has been set out earlier in this opinion.

The jury's general verdict in favor of the defendant denied any and all claims of the plaintiff, even to the existence of the contract forming the basis of count 4 of plaintiff's complaint. This being so no injury inured to plaintiff by the court's ruling on the demurrer to plea 5 regardless of the limitation of time involved, whether six months or six years.

We are further of the opinion that no reversal of this cause should be predicated on the court's rulings on the demurrers to pleas 5 and 6 (appellant's assignments 2 and 3), for the reason that there was ample evidence presented by the defendant to sustain his plea of the general issue (plea 1), and his two special pleas in recoupment (pleas 3 and 4), and to entitle him to the judgment entered. Therefore any error on the rulings on demurrers to pleas 5 and 6 would be error without injury. Hertz v. Montgomery Journal Publishing Co., 9 Ala.App. 178, 62 So. 564. A corollary of the above principle is that if there is a good count in the complaint, although other counts may be defective, and a general verdict in favor of the plaintiff is returned, the judgment will be referred to the good count if there is evidence to sustain it, and the judgment will not be reversed because of the court's erroneous ruling on demurrers to the defective counts. City of Birmingham v. Lynch, 29 Ala.App. 242, 197 So. 46; Brush v. Rountree, Ala. App., 32 So.2d 244, cert. den. 249 Ala. 567, 32 So.2d 246. Pleas of recoupment are in effect complaints and declarations of the defendant against the plaintiff. Carolina-Portland Cement Co. v. Alabama Construction Co., supra.

Appellant's assignment of error No. 6 asserts that the lower court erred in overruling appellant's motion for a new trial.

Every proposition raised by the motion for a new trial has been covered in appellant's assignment of errors except the ground asserted in the motion for a new trial that the verdict of the jury was contrary to the great preponderance of the evidence.

In view of the evidence contained in this record substantially tending to support the conclusion and verdict of the jury, we find no reason or basis whatsoever that could justify our disturbing the trial court's conclusions in this regard.

It is our opinion after examination of the entire record in this cause that none of the errors complained of have probably injuriously affected the substantial rights of this appellant. The cause is therefore due to be affirmed, and it is so ordered.

Affirmed.