405 So.2d 134 (1981)
F. A. ASPINWALL, Old Southern Life Insurance Co., a Corporation, F. G. Compton, Roy T. Epperson
v.
Mattie GOWENS.
79-587.
Supreme Court of Alabama.
May 1, 1981.
Rehearing Denied October 2, 1981.
*135 James W. Webb and Dan E. Schmaeling of Webb, Crumpton & McGregor, Montgomery, and H. Wayne Love of Burnham, Klinefelter, Halsey & Love, Anniston, for appellants.
Betty C. Love of Love, Love, Lawrence & Wood, Talladega, and Charles L. Parks, Anniston, for appellee.
Lanny S. Vines of Emond & Vines, Birmingham, amicus curiae, for Alabama Trial Lawyers Ass'n.
ADAMS, Justice.
The plaintiff-appellee, Mattie Gowens, sued the defendants-appellants, Old Southern Life Insurance Company and its agents, for three million dollars for: (1) breach of contract, (2) fraud, (3) tort of outrage, and (4) fraudulent failure to pay an insurance policy. The plaintiff was the owner of two policies with Old Southern Life Insurance Company, when its agent, F. G. Compton, paid her a visit on July 19, 1977, for the purpose of selling her additional coverage in the form of a major medical policy. Although disputed by Old Southern Life Insurance Company, Mrs. Gowens testified, in answer to questions on the company's application form, that she previously had suffered from diabetes, kidney stones and high blood pressure. In response to this statement, Compton said he could "fix it where it would definitely pay," in the presence of a witness. Ten months later, the plaintiff suffered a heart attack and was hospitalized, incurring a bill of $2,702.80. The policy had a $500.00 deductible provision. Pursuant to Code 1975, § 27-14-7, Old Southern Life voided plaintiff's policy and refunded her premiums, claiming it would not have issued the policy if it had known about the diabetic condition.
The Circuit Judge of Calhoun County submitted the case to the jury on each of plaintiff's theories of recovery and against all defendants, and the jury returned a verdict for $2,702.80, for breach of contract and one million dollars for fraud against all defendants. Defendants duly filed a motion for judgment notwithstanding the verdict, new trial or remittitur, which were all denied by the Circuit Court.
On appeal, the defendants raised several issues. They are as follows:
1. Did the jury award excessive damages under the evidence?
2. Did the trial court err in its charges to the jury recognizing actions for fraudulent refusal to pay, tort of bad faith and tort of outrage?
3. Did the court err in not directing a verdict for the defendants, Aspinwall and Epperson?
4. Did the court err in allowing evidence of wealth of a defendant?
*136 5. Did the court deny defendants their constitutional rights by allowing the jury to determine liability and damages in the same sitting?
In the light of our resolution of this case, we will not attempt to give an extensive analysis of each issue, and as to issues 4 and 5, we pretermit discussion.
At the outset, we agree with the defendants that a directed verdict should have been entered in favor of defendants Aspinwall and Epperson on all counts. The facts do not support any theory of fraud or contract liability on the part of these defendants. See 19 C.J.S. Corporations § 839 (1940). Epperson's name appears on the contract of insurance, and Aspinwall wrote a letter denying the claim and rescinding the policy, but there is not a scintilla of evidence that these acts were done in any capacity other than as officers of the corporation. The judgment below is reversed and rendered as to Aspinwall and Epperson. Likewise, the verdict of the jury on the contract count is contrary to the evidence. The only pecuniary loss that the plaintiff suffered was $2,702.80. The undisputed testimony is to the effect that plaintiff had a $500.00 deductible policy. Applying this deductible to the pecuniary loss results in a maximum possible judgment of $2,202.80. The plaintiff will be required to remit $500.00 of the contract judgment on pain of reversal if she does not do so. Code 1975, § 12-22-71.
As to plaintiff's fraud count, we are persuaded that there was substantial evidence to support a verdict for the plaintiff on this count. Plaintiff claims that although she told Old Southern's agent that she had diabetes, kidney stones and high blood pressure, he said that he would "fix it where it would definitely pay." The company did not pay and plaintiff was upset by receiving duns from the hospital. The company denied these allegations, but the jury believed the plaintiff. We cannot disturb the jury's verdict under the facts in this case. Decker v. State Nat. Bank, 255 Ala. 373, 51 So.2d 538 (1951); Indemnity Ins. Co. of North America v. Holiway, 233 Ala. 100, 170 So. 329 (1936); Hughes v. Cartwright, 222 Ala. 4, 130 So. 550 (1930).
The defendants raise as an issue that the court below erred in charging the jury on actions for fraudulent refusal to pay, tort of bad faith and tort of outrage. Having determined that plaintiff did have the cause of action in contract and fraud, we find defendants' argument in this regard without merit. In Trammell v. Robinson,[1] 34 Ala.App. 91, 98, 37 So.2d 142, 148 (1948), we said:
[I]f there is a good count in the complaint, although other counts may be defective, and a general verdict in favor of the plaintiff is returned, the judgment will be referred to the good count if there is evidence to sustain it, and the judgment will not be reversed because of the court's erroneous ruling on demurrers to the defective counts.
We turn now to the more serious issue raised by the defendantsthe issue of whether damages on the fraud count are excessive. Our polestar is Mr. Justice Simpson's opinion in Carlisle v. Miller, 275 Ala. 440, 444, 155 So.2d 689, 692 (1963), in which he said the following:
It is almost platitudinous to restate the guiding rules, but here they are: The verdict of a jury should not be interfered with merely because in the opinion of the court the jury gave too little or too much (Vest v. Gay, supra, [275 Ala. 286, 154 So.2d 297]; Airheart v. Green, 267 Ala. 689, 104 So.2d 687; Alabama Great Southern Ry. Co. v. Baum, 249 Ala. 442, 31 So.2d 366); and the authority vested in the courts to disturb a verdict of the jury on the ground of excessiveness is one which should be exercised with great caution. Airheart v. Green, id.; McLaney v. Turner, 267 Ala. 588, 104 So.2d 315; Louisville & Nashville Ry. Co. v. Tucker, 262 Ala. 570, 80 So.2d 288, 298. Where, *137 as here, there is no set standard for the admeasurement of damages but the damages to be awarded are left to the sound discretion of the jury, a remittitur or a new trial should not be ordered on the ground of excessiveness of the jury's verdict except in those cases where the court can clearly see that the verdict has been reached on account of bias, passion, prejudice, corruption, or other improper motive or cause. Airheart v. Green, supra; Yarbrough v. Mallory, 225 Ala. 579, 144 So. 447. And only where the damages allowed are so excessive as to warrant the belief that the jury must have been misled by some mistaken view of the merits of the case should the court interfere and set the verdict aside (National Surety Co. v. Mabry, 139 Ala. 217, 35 So. 698); also, where the trial court refuses to grant a new trial because he does not believe the verdict is excessive the favorable presumption attending the jury's verdict is thereby strengthened. International Union, etc. v. Palmer, 267 Ala. 683, 104 So.2d 691; Birmingham Electric Co. v. Howard, 250 Ala. 421, 34 So.2d 830.
Suffice it to say that we are most reluctant to set aside a jury verdict awarding punitive damages in a fraud case. In Ridout's-Brown Service, Inc. v. Holloway, 397 So.2d 125 (Ala.1981), we allowed a judgment to stand in the amount of $220,000.00, where the custodian of a dead body misrepresented the condition of the dead body to the bereaved sister. We allow punitive damages, otherwise called "sweat money," in fraud cases in the interest of deterring the defendant and as an example to others who may have contemplated similar actions. Southern Life & Health Ins. Co. v. Whitman, 358 So.2d 1025 (Ala.1978); Old Southern Life Insurance Company v. Woodall, 348 So.2d 1377 (Ala.1977); Loch Ridge Construction Company, Inc. v. Barra, 291 Ala. 312, 280 So.2d 745 (1973). Nevertheless, applying the test of the Carlisle case to the facts of the instant case, we are of the opinion that the judgment of a million dollars against the corporate defendant, Old Southern Life Insurance Company, and F. G. Compton cannot stand. As an overseer court, we cannot allow our justice system to do injustice in the name of doing justice. Fortunately, we have an escape hatch on the appellate level in Code 1975, § 12-22-71, which reads as follows:
When an appeal is taken to the appropriate appellate court from the judgment of any court and the appellate court shall be of the opinion that the case should be reversed because the judgment of the lower court is excessive and that there is no other ground of reversal, the appellate court shall notify the appellee of the amount which it deems in excess of the just and proper amount of recovery and require the appellee, within a time to be stated in said notice, to remit such amount upon penalty of a reversal of the case. If the appellee does not, within the time stated in such notice or within such further time as may be granted by the court for good reason file a remittitur of such excessive amount, the appellate court shall reverse and remand the case; but, if the appellee shall file with the court a remittitur of the amount deemed excessive by the court, the appellate court shall reduce the amount of the judgment accordingly and shall affirm the case and enter a judgment for such reduced amount, which judgment so entered shall be and remain the judgment of the lower court and shall date back to the time of the entry or rendition of the judgment in the lower court.
Although we are of the opinion that the evidence below was sufficient to sustain a jury verdict in favor of the plaintiff on the fraud and contract count (as reduced) against the corporate defendant and F. G. Compton, we are not of the opinion that it is supportive of an award of a million dollars. Consequently, based on the authority of Code 1975, § 12-22-71, we affirm the judgment of the trial court on the fraud count conditioned upon appellee's filing with this court within 14 days of this opinion a remittitur in the amount of $750,000.00, affording plaintiff a judgment on the fraud count of $250,000.00. Furthermore, we affirm the judgment on the contract *138 count against the corporate defendant and F. G. Compton, conditioned, however, upon the appellee's filing with this court within 14 days of this opinion a remittitur in the amount of $500.00, thereby affording plaintiff a judgment in the amount of $2,202.80 on the contract count; otherwise, the judgment appealed, both on the contract as well as the fraud count, is reversed and the cause is remanded for a new trial. Judgment against Aspinwall and Epperson is reversed and rendered.
REVERSED AND RENDERED AS TO ASPINWALL AND EPPERSON.
AFFIRMED CONDITIONALLY AS TO THE CORPORATE DEFENDANT AND F. G. COMPTON ON THE FRAUD AND CONTRACT COUNTS.
TORBERT, C. J., and FAULKNER, JONES and EMBRY, JJ., concur.

On Application for Rehearing
ADAMS, Justice.
Petitioners, Old Southern Life Insurance Company and F. G. Compton, call to our attention that, among other things, our opinion is in error as to a procedural matter. In the opinion we say:
The defendants raise as an issue that the court below erred in charging the jury on actions for fraudulent refusal to pay, tort of bad faith and tort of outrage. Having determined that plaintiff did have a cause of action in contract and fraud, we find defendants' argument in this regard without merit. In Trammell v. Robinson, 34 Ala.App. 91, 98, 37 So.2d 142, 148 (1958), we said:
[I]f there is a good count in the complaint, although other counts may be defective, and a general verdict in favor of the plaintiff is returned, the judgment will be referred to the good count if there is evidence to sustain it, and the judgment will not be reversed because of the court's erroneous ruling on demurrers to the defective count. (Footnote omitted.)
The petitioners contend that the reasoning in Trammell deals only with a pleading problem and does not extend to the facts in this case where petitioners are claiming not that a count was defective, but that there was insufficient evidence to charge the jury on the tort of outrage and the tort of bad faith refusal to pay an insurance claim. Since the opinion was released in this case, we have had occasion to review in depth the substance of petitioner's contention in another case. Ex parte Nix, 401 So.2d 64 (Ala.1981). Our Court of Civil Appeals, as well as this Court, has not always been clear on its application of Trammell. On some occasions the doctrine has been applied to fact situations similar to that in this case. On reconsideration, we believe the better view to be that if a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing with specificity the grounds upon which the particular count is not supported by the evidence. If this is not done and all counts go to the jury and a general verdict is returned, the court will presume that the verdict was returned on a valid count.
The question in this case is: Did the petitioners challenge by motion for directed verdict the failure of the plaintiff to make out a case under the tort of outrage and the tort of bad faith refusal to pay an insurance claim, and argue the motion with specificity? We have carefully reviewed the record and we do find that the defendants filed a motion for directed verdict as to these two counts, but they did not preserve error as to the tort of outrage because the insufficiency of the evidence was not argued with sufficient specificity. However, as to the tort of bad faith refusal to pay an insurance claim, we find the defendant did argue with sufficient specificity. On the other hand, our review of the evidence leads to the conclusion that there was ample evidence to support the judge's submission of this count to the jury.
We do not find merit in petitioners' other objections to the court's opinion.
*139 OPINION EXTENDED; APPLICATION FOR REHEARING OVERRULED.
FAULKNER, JONES, SHORES and BEATTY, JJ., concur.
EMBRY, J., concurs specially.
TORBERT, C. J., dissents.
MADDOX and ALMON, JJ., not sitting.
EMBRY, Justice (concurring specially on rehearing):
In order to explain that there is no inconsistency between concurring with the majority in this case and dissenting in Chavers [v. National Security Fire & Cas. Ins. Co., 405 So.2d 1], I would note that the facts in this case are greatly more probative of the tort of bad faith than are those in Chavers. I would also note that, although the trial court made no express determination as a matter of law that the facts in this case justified submitting to the jury the question of whether those facts satisfied the standards of recovery set forth in Chavers, and in this writer's dissent in Vincent v. Blue Cross-Blue Shield of Alabama, Inc., 373 So.2d 1054 (Ala.1979), such determination was implicit in the trial court's submission of the case to the jury under proper instructions.
TORBERT, Chief Justice (dissenting).
In its extended opinion on application for rehearing, a majority of this Court addresses a procedural matter, and states the following:
[W]e believe the better view to be that if a complaint has more than one count and the defendant believes that the evidence is not sufficient to support one or more of those counts, he must challenge this by motion for directed verdict, specifying the count which is not supported by evidence and detailing the grounds upon which the particular count is not supported by the evidence with specificity.
I have no quarrel with that statement.
The majority then writes, "[A]s to the tort of bad faith refusal to pay an insurance policy, we find that defendant did argue with sufficient specificity." Again, I think the majority is correct.
However, I differ with the majority when it concludes: "On the other hand, our review of the evidence leads to the conclusion that there was ample evidence to support the judge's submission of this [bad faith] count to the jury." Unfortunately, the majority does not set out in its opinion a summary of the evidence it feels supports a claim of bad faith refusal to pay an insurance claim, but only that evidence supporting a fraud count. My own review of the evidence compels me to conclude that it simply does not support a claim for bad faith refusal to pay.
I agree that there is evidence in this case which, if believed by the juryand the jury apparently did believe the plaintiff's evidence would support a finding of fraud. In short, the plaintiff says she told the company's agent, when answering questions on the policy application, that she had previously suffered from diabetes, kidney stones, and high blood pressure. The majority notes that this was "disputed" by the defendants. The plaintiff then says the company's agent told her he could "fix it [the policy] where it would definitely pay." Again, the majority notes, the defendants "denied" this contention. So we have a classical case for a jury's determination: an everyday courtroom swearing match where plaintiff says "You did" and defendant says "I didn't either." As the majority says, the jury believed the plaintiff. That is sufficient to support plaintiff's fraud claim; but all of that hardly approaches the question of a bad faith refusal to pay an insurance claim as that cause of action has been recognized by this Court and by other courts.
Proof of a fraud in this context merely shows that a defendant took a plaintiff's premium payments without in fact insuring the plaintiff; it does not establish that the defendant either has refused to settle a lawful claim while having "no lawful basis for refusal coupled with actual knowledge of that fact" or has made an "intentional failure to determine whether or not there was any lawful basis for such refusal." Chavers v. National Security Fire & Cas. Ins. Co., 405 So.2d 1 (Ala.1981).
*140 One should not conclude, in a case like the present one, that because there has been a tort of fraud there must ipso facto be also the tort of bad faith failure to pay. Indeed, there may not be room in such a case for both torts, for the essence of a fraud is a misrepresentation which plaintiff relies on to his or her detrimentin this context, that means that plaintiff must have relied on a representation that she was getting insurance when she in fact was not getting insurance. The essence of the tort of bad faith is that the defendant has failed, without good reason, to pay a claim it knows is valid. If the proof of fraud shows there was in fact no insurance provided to the plaintiff, by what reasoning can the defendant be found to have willfully failed to pay an unquestionably valid claim? It would seem that in a case like this, proof of the fraud will disprove the other tortfor if the plaintiff has suffered a detriment by reliance on the misrepresentation, it is because the defendant has in fact not insured her, and if there is no insurance there can be no wrongful failure to pay an insurance claim; on the other hand, if plaintiff proves a bad faith failure to pay a valid claim, it can be only because plaintiff got her insurance, and if she did then she apparently did not suffer as a result of the alleged fraud.
In other words, I am not certain that both theories can be factually supported in the same case. It appears, however, that the majority has assumed that the very facts which show fraud also prove a bad faith failure to pay a claim. It would probably be logically inconsistent for the jury to find both torts in the context of this case.
However all of those matters may be, I am certain that in this case the evidence proving fraud cannot be used to prove the tort of bad faith failure to pay an insurance claim. In this case the plaintiff's claim to any entitlement at all was dependent upon her claim that she informed the agent of her pre-existing health impairmentsand this claim was disputed by defendants' evidenceand possibly upon her further claim that the agent said he could "fix it" so the policy would pay anywayand again, this claim was also disputed by defendants' evidence. There is no doubt that the jury, on the same evidence, could have found for the defendants. Thus, until the jury found for the plaintiff, it could not be said that there was a valid claim which the defendant insurer could have wrongfully failed to pay. See Gulf Atlantic Life Ins. Co. v. Barnes, 405 So.2d 916 (Ala.1981) (Maddox, J., dissenting in part). If it could not be said until after the jury's verdict that the insurer had any liability, then how could the insurer be held to have knowingly and wrongfully denied a valid claim long before the lawsuit was filed?
The rule in other jurisdictions in regard to bad faith cases such as this is well stated in a Louisiana case:
Where the insurer has a reasonable ground to believe that its defense is valid, its refusal to pay a claim is not considered as "without just cause" subjecting it to penalties, even though the defense is subsequently not upheld by the court.
Mistric v. Republic Nat. Life Ins. Co., 314 So.2d 472 (La.App.1975). That Louisiana court was dealing with a statutory penalty, as was the Missouri court which wrote:
An insurer may question an issue and contest an issue of fact relating to its liability if it has reasonable cause to believe and does believe that there is no liability under its policy and that it has a meritorious defense. Of course, the mere fact that the judgment is adverse to the defendant is not a sufficient reason for imposing the penalty.
Welch v. Western Cas. & Surety Co., 567 S.W.2d 743, 748 (Mo.App.1978). This principle is not altered by its application in the present case, which does not involve a statutory penalty. "The ... penalty is not to be imposed merely for the reason that it turned out at the trial ... there was, in reality, no reason for denial of liability," Koch v. Prudential Ins. Co., 205 Kan. 561, 470 P.2d 756 (1970).
It is clear that in this case the jury hearing the facts could have found for either side. The courts in other jurisdictions dealing *141 with this problem have applied the principle that where the evidence at trial presents a jury question as to the insurer's liability, there is a reasonable ground for the defense and thus there can be no "bad faith" findingunless, of course, the defense itself was made in bad faith. For example, the Georgia Court of Appeals has written:
Since there was a jury issue as to whether Mr. Wilson was mentally competent to execute the release, and a verdict was authorized for either plaintiff or defendant on that issue, it cannot be said that the defense of Gulf Life was frivolous or unfounded, or that it did not have a reasonable ground for contesting the claim. No bad faith appears in making the defense, and the award of penalty and attorney's fees was unauthorized.
Gulf Life Ins. Co. v. Wilson, 123 Ga.App. 631, 181 S.E.2d 914 (1971). There can be no "bad faith" liability where the evidence indicates a legitimate controversy as to whether benefits are due. Lee v. Insurance Co. of North America, 397 F.Supp. 426 (E.D.Tenn.1974).
The matter has been stated very simply: "If the evidence authorized a verdict for the defendant, or to put it another way, if the verdict could have gone for either party it does not authorize a finding of bad faith." Gulf Life Ins. Co. v. Wilson, 123 Ga.App. 631, 181 S.E.2d 914 (1971). See also, Icklone v. Travelers Indemnity Co., 345 So.2d 202 (La.App.1977). I submit that this is the case here; the evidence was disputed and the jury's verdict could have gone either way.
Since the record in this case does not disclose any evidence of the elements of a bad faith refusal to pay under our decisions in Chavers and Barnes, it was error to submit this claim to the jury. The jury could not possibly have made a finding of "bad faith" without hearing evidence directed toward that question. The fact that the defendants lost on the disputed fraud issues is not proof of bad faith, Welch v. Western Cas. & Surety Co., supra; yet that seems to be what the majority concludes.
For these reasons I must respectfully dissent.
NOTES
[1] In accord, Morgan v. Embry, 17 Ala.App. 276, 85 So. 580 (1919); Lang v. Leith, 16 Ala.App. 295, 77 So. 445 (1917); Turnipseed v. Burton, 4 Ala.App. 612, 58 So. 959 (1912); Bessemer Liquor Co. v. Tillman, 139 Ala. 462, 36 So. 40 (1904).